O’NIELL, Chief Justice.
 

 This is a suit to annul a sale of certain real estate in New Orleans, sold by the plaintiff’s wife, Daisy Green .Capillon, to her daughter, Charlotte Jackson Chambliss, wife of Robert F. Chambliss. She is a stepdaughter of the plaintiff. He avers that, although the title to the property stood in the name of his wife, it belonged to the matrimonial community, and that her purpose in selling the property was to defraud him of his half interest in it. He avers that the sale was made without any consideration, notwithstanding it was stated in the deed that the price was $4,000, being $700 cash, $1,491.16 represented by the buyer’s mortgage note payable in 18 months, and $1,808.84 represented by her assuming payment of a mortgage note owed by the seller to the Pelican Homestead Association. The plaintiff avers that the sale was null for the reason primarily that he did not sign the deed and that his wife did not have authority to sell property belonging to the matrimonial community.
 

 ' The defendant in her answer averred that the property never belonged to the matrimonial community existing between her mother and the plaintiff, that in fact it was the separate property of her mother, and hence that she had the right to sell it without consulting her husband; that her mother made the sale in good faith, for the consideration stated in the deed; and that she, the defendant, also was in good faith and actually paid the cash part of the price stated in the deed when she assumed the obligation to pay the balance of the $4,000. She averred finally that, as the property was in fact the separate property of her mother, the plaintiff had no interest in the matter. She called her mother in warranty to defend the title. The mother, answering the call in warranty, set up the same defense which
 
 *6
 
 licr daughter had made in her answer to the suit. After hearing the evidence the judge rejected the plaintiff’s demand. He is appealing from the decision.
 

 A sufficient defense to the suit is that the property in contest did not belong to the matrimonial community existing between the plaintiff and Daisy Green Capillon, but was her separate property, and hence she had the right to sell it without her husband’s consent.
 

 The evidence adduced on the trial of the case convinces us that the sale which the plaintiff complains of was not a simulation but was made in good faith on the part of both the seller and the buyer and for the consideration stated in the deed, the cash portion of which was actually paid by the buyer. All of that, however, is a matter of no importance to the plaintiff in this suit, because he had no proprietary interest in the property. He relies upon a sale of the property made by the Pelican Homestead Association to his wife on December 30, 1940, and on the fact that it was not stated in the deed that the property was acquired by the wife as her separate or paraphernal property, with her separate or paraphernal funds, under her exclusive administration. In fact the plaintiff, in his petition, does not trace his wife’s title back beyond the sale made to her by the Pelican Plomestead Association on December 30, 1940. That sale was made for the price of $2,100, represented by her promissory note payable in monthly installments and secured by a mortgage and vendor’s lien on the property. The plaintiff relies upon the presumption stated in article 2402 of the Civil Code, that property bought in the name of either the husband or wife during their marriage belongs to the matrimonial community existing between them, even though the property be bought in the name of only one of the spouses. The presumption established by that article of the Code is a rebuttable presumption when the purchase is made in the name of the wife, without a statement in the deed that the purchase is made with her separate funds under her exclusive administration and control ; although it is not so with regard to a purchase made in the name of the husband during the matrimonial community. In the Succession of Farley, 205 La. 972, loc.cit. p. 980, 18 So.2d 586, loc.cit. p. 588, referring to article 2402 of the Civil Code, it was declared:
 

 “When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, and thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under
 
 *8
 
 her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her separate control, and as her separate or paraphernal property. Succession of Rouse, 144 La. 143, 80 So. 229; Rodriguez v. Succession of McFettridge, 156 La. 111, 100 So. 68; Succession of Watkins, 156 La. 1000, 101 So. 395; Kittredge v. Grau, 158 La. 154, 103 So. 723; Miller v. Miller, 160 La. 936, 107 So. 702; Tillery v. Fuller, 190 La. 586, 182 So. 683; American Surety Co. v. Noble, 196 La. 312, 199 So. 131; Drewett v. Carnahan, La.App., 183 So. 103, in which a petition for review was denied on August 5, 1938; Smith v. Brock et al., La.App., 200 So. 342.”
 

 In this case the property in contest was bought originally by the wife, Daisy Green Capillon, on May 27, 1937, as her separate property and with her separate funds under her exclusive administration and control, and was therefore her separate property. And those facts were stated in the deed by which she bought the property.
 

 In September 1939 Daisy Green Capillon borrowed $900 from the Columbia Homestead Association, and, to secure the loan, which was made payable in installments of $9 per month, she made a cash sale of the property to the association for the $900 and the association immediately re-transferred the property to her for the $900 payable in the installments of $9 per month. In both the sale and the resale, which really constituted one transaction, it was declared that the property was the separate property of Daisy Green Capillon; and the husband signed the deeds for the purpose of authorizing his wife to sign them.
 

 Thereafter, on December 30, 1940, Daisy Green Capillon borrowed $2,100 from the Pelican Homestead Association, for the purpose of improving and adding to the buildings on the property; and, to secure the loan of $2,100, which was payable in monthly installments, she made what purported to be a sale of the property to the homestead association for $2,100 and immediately repurchased the property from the association for the same price, represented by a demand note secured by a mortgage and vendor’s lien on the property and payable in monthly installments. It was not stated in the cash sale made to the association or in the credit sale made by the association to Daisy Green Capillon that the property was her separate or paraphernal property. For that reason the plaintiff in this case relies upon the presumption established by article 2402 of the Civil Code that the property became community property as a result of the credit sale made by the Pelican Homestead Association to his wife on December 30, 1940.
 

 The record shows that all of 'the $2,100 was disbursed by the Pelican Homestead
 
 *10
 
 Association for the separate account of Daisy Gre.en Capillon.. The association paid the balance due by her to the Columbia Homestead Association and then paid the invoices of the several furnishers of building material for the construction work done in the improvement and enlargement of the buildings on the property in contest.
 

 The plaintiff, who is a mechanic, testified that he did some of the construction work on the property in contest, and his testimony is supported by that of other witnesses. Their testimony however is denied by the plaintiff’s wife and her witnesses. Whether the plaintiff is entitled to compensation for services rendered by him in that respect is a matter of no importance in this case, because, if the separate estate of the wife is indebted to the community for such services rendered by the husband, that fact does not affect her title to the property.
 

 The evidence discloses also that the wife conducted a boarding house on the property in contest, after enlarging and improving it with the funds borrowed from the Pelican Homestead Association. The plaintiff produced evidence to prove that he contributed to the expense of conducting the boarding house business; but that also is a matter of no importance in this case because, if the separate estate of the plaintiff’s wife is indebted to the matrimonial community, that fact does not affect the title to the property in contest.
 

 The decisive point in the case is that the transaction had by and between the plaintiff’s wife and the Pelican Homestead Association on December 30, 1940, on which transaction the plaintiff relies in his contention that the property in contest became community property, was only a pignora- . tive transaction, and therefore did not have the effect of divesting the wife of her title to the property and of investing it in the matrimonial community between her and her husband. The decision rendered in the Succession of Farley, heretofore cited, is appropriate here. In that case, Elmer A. Farley borrowed money from a building and loan association and to secure the loan the association required him to make what purported to be a cash sale to the association for the amount of the loan and to repurchase the property from the association -for the same amount, payable in installments. For some reason, not disclosed by the record, but perhaps to have additional security, the association required that the resale of the property to Elmer A. Farley should be made to him and his mother, so that the note secured by the vendor’s lien and mortgage on the property, for the amount of the loan, should be signed not only by Elmer A. Farley, but also by his mother, and by his father for the purpose of authorizing her to sign the note. Thereafter the father died and his heirs contended that by the transaction had by Elmer A. Farley with the building and loan association the title to the property passed from
 
 *12
 
 him to the association and from the association to him and his mother; hence the heirs of her husband contended that a half interest in the property was thereby vested in the matrimonial community existing between Elmer A. Farley’s father and mother at the time of the transaction. We held that the transaction between Elmer A. Farley and the building and loan association was only a pignorative contract, and therefore did not affect his original title to the property. In the course of the opinion, 205 La. 972 at page 984, 18 So.2d 586 at page 590, it was said:
 

 “In the first place Elmer A. Farley’s transaction with the building and loan association was never intended to operate as a transfer of title to the property which he mortgaged to secure the loan made by the association. The sale and resale of the land constituted a pignorative contract, which was made in the form of a sale and resale for the purpose merely of giving the building and loan association a vendor’s lien, in addition to the special mortgage.”
 

 The plaintiff cites and relies upon the decision rendered in the case of Barnes v. Thompson, 154 La. 1036, 98 So. 657, 658. In that case a married woman died leaving certain real estate, the title to which was recorded in her name. She was survived by her husband and a sister and by children of a deceased sister. The surviving sister of the deceased sued the surviving husband for a half interest in the property, claiming that it belonged to the separate estate of her deceased sister and therefore that a half interest in the property was inherited by her, the surviving sister, and that the other half interest was inherited by the children of the predeceased sister. The defendant claimed that the property belonged to the matrimonial community existing between him and his deceased wife, and hence that he owned a half interest in the property as surviving partner in the community and inherited the other half interest from his deceased wife by virtue of article 915 of the Civil Code as amended by Act 57 of 1910. The plaintiff in the suit relied upon the fact that on two or more occasions when her sister borrowed money from a building and loan association she transferred the property to the association and immediately repurchased it from the association, and that in the deed in which she repurchased the property, and which deed was signed by the husband to authorize his wife to sign, it was stated that the property became the separate property of the wife by her purchase from the building and loan association. The plaintiff’s claim therefore rested upon a plea of estoppel, her contention being that the husband by signing the act of sale made by the building and loan association to his wife, in which act it was recited that the property was purchased as the separate property of the wife, he became estopped to deny that the .property did become her separate property and not community property. But in the last one of the transactions by which
 
 *14
 
 the wife borrowed money from a building and loan association it was not declared that the property was her separate or paraphernal property. In deciding that the husband was not estopped by the declaration made in the previous sale or sales to and by a building and loan association, that the property was the separate property of his wife, the court declared:
 

 “But, aside from this, in the present case, the last act by which she acquired from the building and loan association in 1915 (the one under which the property was held at her death), did not recite that she had acquired with her separate funds, and hence it is presumed in law that the property was acquired under that deed by the community. R.C.C. art. 2403; Fortier v. Barry, 111 La. 776, 35 So. 900; Holloman v. Alexandria B. & L. Ass’n, 137 La. 970, 69 So. 764. In the latter case it was held that since the passage of Act 120 of 1902, the sale to, and repurchase from, a building and loan association ‘cannot be dealt with as a loan secured by mortgage, but as a purchase and a sale, with vendor’s rights and privileges.’ ”
 

 That expression in the opinion rendered in Barnes v. Thompson appears to conflict with the decision rendered in the Succession of Farley. But the facts stated in the opinion rendered in Barnes v. Thompson show that that decision was a correct one, because the property in contest was originally community property and never became the separate property of the wife by the transactions which she and her husband had with the building and loan associations. For example, in the second paragraph of the opinion rendered in the case it is stated: “When defendant and his wife were married some 22 years before her death, neither had anything, and the property accumulated thereafter was the result of the labor of either one or the other, or both, and fell into the community,” et cetera. The quotation taken from the case of Holloman v. Alexandria Building & Loan Ass’n, in the opinion rendered in Barnes v. Thompson, was taken from the headnote or syllabus of the opinion rendered in Holloman v. Alexandria Building & Loan Ass’n, 137 La. 970, 69 So. 764, — the entire proposition being stated there thus:
 

 “Under Act No. 120 of 1902, a purchase of property by an association [a homestead or building and loan association] from a member, and the resale of such property at the same time, cannot be considered or dealt with as a loan secured by mortgage, but as a purchase, and a sale with vendor’s right and privileges.”
 

 That statement, made in the headnote of the opinion in Holloman v. Alexandria & Pineville Building & Loan Ass’n, was made in a suit in which the contest was between the building and loan association and the borrower, who was a married woman, contending that under, the provisions of Act 120 of 1902, like the provisions of its predecessor, Act 115 of 1888, a sale made by a borrower to a building and loan associa
 
 *16
 
 tion and a resale on terms of credit by the association to the borrower did not in reality create a vendor’s lien but was only a pignorative transaction. The court held that, as between the building and loan association on the one side and the borrower or his or her creditors, on the other side, the sale and resale to and by ■ a building and loan association, although made for the purpose merely of securing a loan, was in reality a sale and resale and therefore gave rise to a vendor’s lien in favor of the building and loan association, in addition to the special mortgage, to secure the payment of the loan. The court quoted from section 13 of Act 120 of 1902, thus:
 

 “Married women may subscribe for, hold, withdraw, transfer, pledge, borrow upon and surrender stock in such corporations without the consent or authorization of their husbands, and same shall be her separate benefit as paraphernal property.”
 

 The court quoted also from Section 9 of the act, thus:
 

 “That such associations are authorized and empowered to contract and agree with any person to acquire or purchase from such person any property, and afterward to sell or dispose of the same property to a piember, even though said agreement be made at one and the same time, and such contract and agreement shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association to such member, and such association, to secure payment of the amount due by such member, shall have all the rights, privileges and securities which are now accorded by the law to the vendor of the property.”
 

 The decision, therefore, in Holloman v. Alexandria & Pineville Building & Loan Association, can be regarded only as authority for the proposition that a sale and resale of property to and from a building and loan association, or homestead association, made by a borrower for the purpose of securing the payment of a loan, is in 'fact and in truth a sale and resale, and therefore creates a vendor’s lien in favor of the association, so far as the borrower and his or her creditors are concerned; but the decision is not ’authority for the proposition that such a sale and resale, made merely to secure a loan made by the building and loan or homestead association, can have the effect of actually transferring the title to the property from the borrower, if she be a married woman, to the building association, and of retransferring the property from the association to the matrimonial community, so as to invest a title to half of the property in the borrower’s husband. The only purpose that the legislature had in mind in passing Act 115 of 1888, and its successor, Act 120 of 1902 (and the amending act, Act 280 of 1916), was to protect building and loan or homestead associations by enabling them to acquire a vendor’s lien as well as a mortgage on property on which
 
 *18
 
 they might see fit to make a loan. Previous to the passage of the Act of 1888 the jurisprudence was that a transaction by which a borrower made a cash sale of his property to the lender and the lender immediately resold the property to the borrower on terms of credit was only a pignorative transaction and therefore did not create a vendor’s lien. The reason for that was that a lien, unlike a mortgage, cannot be created by convention or contract between the debtor and creditor unless there is a statute declaring that such a contract shall create the lien.
 

 The reason for making, by Act 115 of 1888, and its successors, Act 120 of 1902 and Act 280 of 1916, an exception in favor of building and loan associations, or homestead associations, in the matter of securing loans made by them, manifestly, was that they had been declared by Act 151 of 1888 to be corporations of “Public utility and advantage”. They were so recognized in the following cases: First National Bank v. Louisiana Tax Commission, 175 La. 119, 143 So. 23; State ex rel. Cotonio v. Italo-American Homestead Association, 177 La. 766, 149 So. 449; and Treigle v. Acme Homestead Ass’n, 181 La. 941, 160 So. 637, 98 A.L.R. 69.
 

 The facts stated in the opinion in Fortier v. Barry, 111 La. 776, 35 So. 900, disclose that the decision is not at all appropriate to the present case and in fact was not appropriate to the question at issue in Barnes v. Thompson.
 

 In a case not referred to by either of the attorneys here, namely, Mayre v. Pierson, 171 La. 1077, 133 So. 163, decided in 1931, the court reviewed the jurisprudence on the subject of the effect of a sale and resale to and from a building and loan association to secure a loan, and concluded that, although such a sale and resale, made under authority of section 9 of Act No. 120 of 1902 (amended by Act No. 280 of 1916), was a genuine sale, giving rise to a vendor’s lien in favor of the building and loan association so far as the borrower and his or her creditors were concerned, nevertheless, if the borrower in such a transaction happened to be a married woman and the property transferred was her separate property, the sale and resale did not have the effect of transferring the 'title to the building and loan association and thence to the matrimonial community existing between the borrower and her husband. We adhere to the doctrine of that case.
 

 The judgment is affirmed.