PONDER, Justice.
This is a partition proceeding. The plaintiffs seek to be recognized as the sole and only heirs of their deceased father, Henry F. Frohlich, and to be decreed the owners of one-half interest in Lots 5 and 6 *961 in Square 515 in the Seventh District of the City of New Orleans; they also ask for a decree ordering the partition of the property by licitation according to law.
The defense to the suit is that the property was the separate property of the plaintiffs’ mother, one of the defendants, and formed no part of the community existing between Henry F. Frohlich and their mother. On trial of the case the district judge gave judgment in favor of the defendants decreeing the property to be the separate property of the plaintiffs’ mother- and that therefore the plaintiffs had no interest in it. The plaintiffs have appealed.
The plaintiffs are the children of Henry F. Frohlich and Mrs. Margaret Heitman Glossop Frohlich, now Mrs. Margaret Heitman Bonnemeier. It appears that Mrs. Margaret Heitman was first married to George Glossop. John Francis Glossop was the only issue of this marriage. Three of the plaintiffs are issue of the second marriage of Mrs. Heitman with Henry Frohlich and the other plaintiff is a child adopted by them. Mrs. Heitman was married a third time to August Bonnemeier.
John Francis Glossop entered into an agreement to purchase the property involved herein with the Carrollton Land Company Limited on May 1, 1916 for a consideration of $510, payable as follows: $20 cash and the balance to be paid at the rate of $8 a month. It appears that at the time he entered into this agreement he was a minor. On February 24, 1928 the York Realty Company Limited, successor to the Carrollton Land Company Limited, deeded the property to Mrs. Margaret Heitman, widow of John Francis Glossop, then wife of Henry Frohlich. The York -Company Limited, upon discovering that John Francis Glossop was still alive and that they had erroneously believed he was the deceased husband of Mrs. Heitman, when in truth and fact her deceased husband was named George Glossop, brought proceedings to revoke the sale with the view of transferring the property to John F. Glossop, the person who had contracted to purchase the property. On March 27, 1928, Mrs. Heitman joined by her husband, Henry Frohlich, transferred the property to John Francis Glossop. It appears that this transfer was brought about by the suit instituted by the York Realty Company Limited because no steps were thereafter taken in the suit. On May 2, 1939, John F. Glossop executed a counter letter wherein he stated 'that the title to the property was placed in his name for convenience only and that all payments on the purchase price were made by his mother, Mrs. Margaret Heitman Glossop, wife of Henry Frohlich.
It is stated in plaintiffs’ brief that the defendant, Mrs. Margaret Heitman, transferred the property to George A. Glossop, her grandson, on December 28, 1945 but the record does not contain a copy of the deed. However, there is a deed in the record showing where George A. Glossop transferred the property back to Mrs. Heit *963 man on October 19, 1946. There is also in the record a counter letter executed by Mrs. Heitman wherein she stated that the title to lot 5 was placed in her name for convenience only and that George Glossop was authorized to cause the counter letter to be registered in the Conveyance Records of Orleans Parish in order to protect his ownership of same. It appears from the pleadings that George A. Glossop conveyed Lot 5 to the Equitable Mutual Homestead Association on April 10, 1947 for a consideration of $2,100 and that bn the same day the Equitable Mutual Homestead Association conveyed the property to John Vinterella, one of the defendants herein.
The plaintiffs contend that the property was acquired by the defendant Mrs. Margaret Heitman during the community existing between her and Henry Frohlich and that the defendants have not successfully rebutted the presumption that the property was acquired with funds belonging to the community. Their contention is based principally on the counter letter of May 2, 1939 wherein John Francis Glossop stated that all payments made on the property were-paid by Mrs.-Heitman and that the property was truly owned by her, his mother. They also rely on the deed of February 24, 1928 wherein Henry Frohlich joined Mrs. Heitman in accepting the transfer of the property from York Realty Company Limited and the deed of March 27, 1928 wherein Henry Frohlich joined Mrs. Heitman as a vendor in the transfer of the property to John Francis Glossop.
John Francis Giossop testified that his counter letter was executed with the view of donating the property to his mother to provide a home for her. His testimony was objected to on the ground that it was an attempt to prove a donation contrary to the provisions of Article 1536 of the LSA-Civil Code which provides that a donation inter vivos of an immovable must be by authentic act. The counter letter does not indicate a donation and it could not be made* so in view of this article of the LSA-Civil Code. However, his testimony is relevant to rebut the presumption that the property was purchased with community funds.
Henry Frohlich separated from Mrs. Heitman some time in the year 1922 and thereafter lived separate and apart from her until February, 1936 when they were divorced. Frohlich died in 1936. He paid his wife alimony at the rate of $15 per month during the period of separation. It appears that Mrs. Heitman received support and assistance from her son, John F. Glossop and her daughters, the plaintiffs. The trial court arrived at the conclusion that all payments on the purchase price of the property from 1916 to 1928, the period of time between the agreement to purchase the property by John Francis Glossop and the transfer -of the property to Mrs. Heitman by the York Realty Company Limited, were made by John Francis Glossop and that from the period of time from 1928 to 1936, when Frohlich died, that the payments were made by either John Francis *965 Glossop or out of money given to Mrs. Heitman by the plaintiffs. The trial court pointed out that the alimony paid by Frohlich was hardly ample to care for the living needs of Mrs. Heitman and that anyway the alimony was her separate property.
We have reviewed the testimony in this case and find that the trial judge is correct in his findings of fact and that no community funds were used in the purchase of the property.
The plaintiffs contend that Mrs. Heitman is estopped from showing that she acquired the property with her separate and paraphernal funds because she alleged in her answer that she and her husband did not use any of their community or separate funds in purchasing the property. It does not appear that this judicial declaration deceived, misled, or damaged the plaintiffs. Such being the case, a plea of this nature cannot be maintained. Janney v. Calmes, 212 La. 756, 33 So.2d 510. As we take it, the plaintiffs must rely on the counter letter of John Francis Glossop because the deed of 1928 indicates that Mrs. Heitman and Frohlich divested themselves of any community interest by their transfer of the property to Glossop.
The plaintiffs contend that the parol evidence was inadmissible to vary the recitals in the counter letter of John Francis Glossop. It is well settled as to immovables acquired by the wife during the community, that where, there is no declaration in the deed that it was purchased with her separate and paraphernal funds, she may at any time afterwards prove, if it be true, that the purchase was made with her separate and paraphernal funds and for her separate use. Succession of Farley, 205 La. 972, 18 So.2d 586 and authorities cited therein. See also, Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676 and Capillon v. Chambliss, 211 La. 1, 29 So.2d 171.
A review of the testimony in this case reveals that the community had no funds with which to purchase the property and that the only funds available were those of John Francis Glossop, the money given to the mother by the plaintiffs, and the alimony received by her.
For the reasons assigned, the judgment is affirmed at appellants’ cost.