388 So.2d 816 (1980)
Mrs. Verlie Holton, wife of Fred B. CURTIS
v.
Fred B. CURTIS.
No. 11097.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
On Rehearing October 9, 1980.
*817 Frederick R. Bott, Patricia Maureen Joyce, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff.
Edward J. Lassus, Jr., New Orleans, for defendant.
Before REDMANN, LEMMON and SCHOTT, JJ.
REDMANN, Judge.
If a wife buys a $60,000 house with only $28,500 of her separate funds, intending (with the husband's consent) to pay the credit balance with community funds, the financial positions of both wife and husband remain the same in a post-divorce property accounting-if the house is still worth $60,000-irrespective of whether the house is held to belong to the community or to the wife's separate estate. In either case-whether the wife is held to own the $60,000 house and repays the community $31,500 or whether the community owns the house and repays the wife $28,500-the wife's separate estate nets $28,500 and the community nets $31,500.
Suppose, however, that monetary inflation has made the house worth $150,000. Then if the wife is held to own the $150,000 house and repays the community only $31,500, she nets $118,500 for her separate estate, instead of only $28,500; but if the community owns the $150,000 house and repays the wife only $28,500, it nets $121,500 rather than $31,500. Whichever estate is held to be the owner gets 100% of the $90,000 "increase in value" resulting from inflation, notwithstanding that from the outset the wife's separate estate (at 47.5%) and the community (at 52.5%) were committed almost equally to the price of the property.
We conclude that the fair treatment of the house, the treatment provided by the principles of the Civil Code, is to hold it owned 28,500/60,000 (or 47.5%) by the wife's separate estate and 31,500/60,000 (or 52.5%) by the community. If inflation has made the house worth $150,000 the wife's separate estate would net 47.5% of $150,000, or $71,250, and the community would net $73,750. By this treatment the "increase" from (or protection against) inflation is shared by both the separate estate and the community in the proportion that each's original commitment bore to the original price.
The facts before us are that (a) the wife and husband both signed the act of purchase although (b) the wife alone was named purchaser, and (c) the husband "acknowledged" in the act that the house was being bought with the wife's separate funds and was her separate property. In truth, however, only the $28,500 cash portion of the $60,000 price was paid with the wife's separate funds: it was always the intention of both wife and husband that funds the law declares community funds (rental income from the house[1]) would pay the balance *818 of the price, by monthly payments during the next 15 years.[2]
The now-divorced wife appeals from a judgment decreeing the community the owner of the house and the wife merely a creditor of the community for the $28,500 her separate funds provided. We amend the judgment to limit the community's ownership to an undivided 52.5% interest and to recognize the wife's separate estate as the owner of the other 47.5% interest.
La.C.C. 2402[3] establishes the basic law that the community includes all property which the spouses "may acquire during the marriage ... by purchase, ... even although the purchase be only in the name of one of the two and not of both ...." C.C. 2334 makes separate any property either spouse "acquires during the marriage with separate funds ...," but the presumption of community character remains: one who claims separateness bears the burden of proof, and this burden is not met by the mere declaration by both spouses in a deed that one is acquiring the property as separate property with separate funds separately administered; Houghton v. Hall, 1933, 177 La. 237, 148 So. 37. The "acknowledgment" in the present matter appears to have been simply an erroneous legal conclusion and, in any case, "estoppel, of course, could not extend beyond an acknowledgment of [the wife's] ownership of the [cash] funds paid under the deed." Barnes v. Thompson, 1923, 154 La. 1034, 98 So. 657. See also Succession of Bellande, 1889, 41 La.Ann. 491, 6 So. 505. Estoppel by deed applies only to existent facts that are recited in the deed, and not to future factual expectations or to matters of legal interpretation. (Indeed, one may question whether a spouse is ever estopped by a recital of separateness-a conclusion at least partly of law rather than purely of fact.)
Barnes itself weakened the precedential authority of the quoted reasoning by alternatively reasoning that a later sale-and-resale for security purposes with a building and loan association had, as a matter of statutory law, to be construed not to be a security device but, ultimately, a sale by the association to the husband and wife, making the property thereafter community if it was not already. That statutory construction of sale-resale in Barnes is disapproved by Mayre v. Pierson, 1931, 171 La. 1077, 133 So. 163. Capillon v. Chambliss, 1946, 211 La. 1, 29 So.2d 171, also disapproving Barnes' sale-resale view, opined that Barnes was nonetheless correct, because the wife never had any separate property. Although the present wife would distinguish Barnes on this fact, we view Capillon as necessarily rejecting in its entirety the theory that the husband is estopped by deed recitals of separateness of funds. If estoppel were applicable, no evidence would be admissible in favor of the husband to contradict his recital by deed that the cash portion of the price was separate, and thus it could never be established that the wife *819 had not had any separate funds. We conclude that our husband is not estopped to contest his recital that the credit portion of the price was to be paid with his wife's separate funds.
One may also note that the three opinions in Houghton discussed at length the legal question of whether the wife's earnings in her own business were separate or community. One explanation of the acknowledgment in Houghton, and here, is that each husband believed, although incorrectly, that under the law the income with which the wife was purchasing was her separate property. Whatever estoppel might otherwise exist is prevented by a proper showing of error; Bellande, above.
Finally, we note that undivided interests can be purchased by a community or by a spouse: a husband who was "head and master" could have expressly purchased a 47.5% undivided interest in a house for his separate estate, with the other 52.5% being purchased for the community. The wife should not be denied the same power to buy an undivided interest when the husband by signing her act of purchase agreed that she was (at least!) to that extent purchasing for her separate estate, and agreed that the credit portion of the price was to be paid with the rentals which by law belonged to the community. Certainly it was the wife's expressed intent to make an investment for her separate estate, and it was only her lack of funds that prevented her purchasing the entire property for her separate estate.
Notwithstanding that Jordy v. Muir, 1898, 51 La.Ann. 55, 25 So. 550, lends superficial support to a conclusion that the house in our case is treatable as 100% community, Jordy did not face the problem of severe inflation: there a house bought for $2500 sold for $2300 net. (The wife's claim to the whole $2300 was rejected and she was allowed only the $716 cash her separate estate had supplied.) Jordy is thus but an example of this opinion's first premise: it makes no economic difference which estate owns the property subject to a debt owed to the other, if the property's value is constant. Jordy does not answer our question. We have had to provide our own answer, and we have done so as fairly as we can.
The judgment is amended to limit the community's ownership to an undivided 52.5% and to recognize the wife's separate estate as owner of the other undivided 47.5% of 2501-03 St. Charles Avenue, New Orleans. All costs are to be divided equally between the ex-wife and the ex-husband's representative.[4]
Before REDMANN, SCHOTT and SARTAIN, JJ.

ON REHEARING
REDMANN, Judge.
Our original opinion's statement that the "intent" of both spouses was that rentals from the property would pay the credit portion of the price was a conclusion from, first, a stipulation that all credit installments were so paid and, second, the wife's interrogatory answers reciting no other available source and creating the impression that no other source existed at the time of the purchase for payment of the credit portion of the price.
The wife (who alone sought rehearing) now argues that our "intent" conclusion was the basis for our decision and that that conclusion is invalid. That conclusion, valid or not, was not our basis for decision. Our basis is set forth in the opinion's sixth paragraph: the presumption of community places the burden of proving separateness upon the wife and she does not carry that burden merely by establishing the husband's acknowledgement (here, "that all payments and installments due hereunder shall be paid by his said wife with her separate funds ...").
The wife's principal original argument was that the husband's "acknowledgement" estopped him from denying separateness and we therefore thought unnecessary the *820 particularization of the wife's burden of proof. But we now supplement our original opinion to explain that the wife's burden can only be met by proving not only that she had under her separate administration sufficient separate funds for the cash portion of the price but also, "by clear, positive, and convincing evidence, ... that her paraphernal property and revenues are ample to enable her to make the purchase with reasonable expectation of meeting the deferred payments." Montgomery v. Bouanchaud, 1934, 179 La. 312, 154 So. 8, 9; Fortier v. Barry, 1904, 111 La. 776, 35 So. 900.
The wife did not carry her burden of proof as to the 52.5% credit portion of the price.
We also respond to the wife's argument that our decision "impairs the security of title to thousands of pieces of immovable property." The wife is not a third person and therefore cannot have relied on her husband's recorded recitals in her own deed of acquisition for the security of her title. The "security of title" argument is not valid if based on the public records doctrine because that doctrine merely makes unrecorded contracts etc. ineffective against third persons; C.C. 2266. Nor is it valid, as to the wife, if based on the parol evidence exclusory rule, C.C. 2276, for the husband and wife could not at the time of acquisition contract with each other, C.C. 1790, and thus no contract between them is valid at all, much less full proof of all of its recitals. (The husband could contract with the mortgagee, and the mortgagee may be entitled to exclude parol, although it need not: the husband's consenting in the act to the wife's mortgage would make it valid even if the property belongs to the community; see C.C. 1787.)
Our original opinion (as here supplemented) and decree are therefore reinstated.
SARTAIN, J., concurs and assigns reasons.
SARTAIN, Judge, concurring and assigning reasons.
I concur in the result because this litigation does not conflict with the public records doctrine. This is a dispute between husband and wife and the decision herein is limited to its own facts.
NOTES
[1] Because the wife had not recorded the notarial declaration of reservation to her separate estate of "all" of the fruits of her separate property-allowed to female spouses only by La.C.C. 2386-the basic rule of C.C. 2386 retains its applicability: "The fruits of the paraphernal property ... fall into the conjugal partnership...." We therefore pretermit discussion of the obvious equal protection problem, but we note that the male spouse is not allowed to record such a declaration and cannot prevent his separate property's earnings' falling into the community.
[2] It happened instead that a refinancing occurred five years later. (The husband appeared as a vendor in the security device sale to the building and loan association-perhaps at the association's insistence-but the resale was to the wife alone and the husband again acknowledged the separateness of the funds and property.) Furthermore, husband and wife separated before the credit balance was paid in full. But the ownership of the property must be determined by the circumstances at the time of its acquisition, because in Louisiana immovable property ownership must at all times be vested. Moreover, (at least at the time of this purchase) the husband and the wife could not buy and sell fractional interests from and to each other, for her separate estate and the community respectively. At the time of the purchase, the wife for her separate estate put up $28,500 and the husband for the community consented to her committing the community rentals to the $31,500 balance, and ownership must be fixed on the basis of those facts.
[3] The Civil Code articles are applicable in their form prior to the revision of the marital property laws by La. Acts 1978 No. 627 and 1979 No. 317.
[4] The ex-husband died during the pendency of this appeal and his representative was substituted as a party.