O’NIELL, Chief Justice.
 

 On July 17, 1912, Elmer A. Farley borrowed $800 from the Suburban Building and Loan Association and gave as security
 
 *975
 
 for the loan a vendor’s lien and special mortgage on a tract of land in the section of New Orleans called Gentilly Terrace. The land was a part of a larger tract which Farley had bought on the 9th day of March 1900 and which he had owned ever since. The transaction by which he secured the loan of $800 consisted of a sale of the part of the land to the building and loan association and a resale by the association, reserving the vendor’s lien and special mortgage to secure the $800, which was called the price. The resale of the property by the building and loan association was made not to Elmer A. Farley alone, but to him and his mother, Elizabeth Koenig Farley, wife of Charles Farley. Fie signed the act of sale to authorize his wife to sign. Elmer A. Farley gave his promissory note for the $800, dated July 17, 1912, and worded “I promise to pay to the order of the Suburban Building and Loan Association”, etc.; but his mother also signed the note as a maker, and her husband signed to authorize her. The note was made payable “on demand” and the interest was payable in weekly installments, “and all in accordance with the charter and by-laws” of the association.
 

 Charles Farley died on August 30, 1940, survived by his wife, Mrs. Elizabeth Koenig Farley, and by their son, Elmer A. Farley, and by three daughters, namely, Mrs. Annie Farley Toney, Mrs. Jeanette Farley Wenzel, and Mrs. Bertha Farley Schulingkamp. Mrs. Schulingkamp was the issue of a previous marriage. The two other daughters and the son of Charles Farley are the only issue of his subsequent marriage to Mrs. Elizabeth Koenig Farley.
 

 Charles Farley left a nuncupative will under private signature, dated August 26, 1940, in which he bequeathed all of his property to his widow, and their son, Elmer A. Farley, and to two of the daughters, Mrs. Toney and Mrs. Wenzel. Mrs. Toney was named as executrix of the will and qualified as such. In making an inventory of the property of the succession, the notary included the half interest in the land which Elmer A. Farley had transferred to the building and loan association and which the association had retransferred to him and his mother on July 17, 1912. The property was referred to in the inventory as having been “acquired jointly by Elmer A. Farley and Mrs. Elizabeth Koenig Farley from the Suburban Building and Loan Association as per act before Harry L. Loomis, Jr., Notary Public, dated July 17, 1912”. Elmer A. Farley was present at the making of the inventory and protested against including in the inventory the half interest in the land described as having been bought by him and his mother on July 17, 1912. He stated to the notary public and the statement was recorded in the inventory, that the land with all of its improvements was owned by him, Elmer A. Farley, exclusively; and that his mother’s signing the deed as a joint purchaser from the building and loan association was done only for his convenience. His mother was present also at the making of the inventory and joined her son in the declarations concerning his exclusive ownership of the property.
 

 Thereafter Elmer A. Farley brought this suit against his three sisters to be declared the sole owner of the land which he had
 
 *977
 
 transferred to the building and loan association and which the association had re-transferred to him and his mother on July 17, 1912. He had his mother cited also as a defendant in the suit, notwithstanding she disclaimed having any title or interest in the land. In fact she had made an affidavit before a notary public .and two witnesses on November 11, 1941, that in truth and in fact she never intended to acquire and never acquired any interest in the land which was transferred by her son Elmer A. Farley to the Suburban Building and Loan Association, and which was “ostensibly” retransferred by the association to her and her son on July 17, 1912; that the property had been acquired by her son as a part of a larger area on March 9, 1909, by authentic act; that she never intended to pay and never paid any portion of the $800 borrowed by her son from the building and loan association; that her signing the deed as a purchaser was only for the benefit and convenience of her son; that he was the real and exclusive owner of the property and was the only person who intended to pay and who did actually pay with his own funds the $800 borrowed from the building and loan association, and referred to in the deed as the purchase price; that ever since the date of the act purporting to be a sale to her and her son, she and her husband and their daughters, with full knowledge of the transaction, always recognized that the property belonged exclusively to Elmer A. Farley; and that all of the improvements subsequently placed on the land were placed there by Elmer A. Farley and were paid for by him with funds belonging to him exclusively. The mother deposed, finally, that she made these declarations under oath “for the purpose of recording the true facts of the transaction”.
 

 One of the defendants, Mrs. Bertha Farley Schulingkamp, died on February 13, 1943, after the filing of the suit; and on the written motion and appearance of her surviving husband, William J. Schulingkamp, and of their son, Albert T. Schulingkamp, and daughter, Carmel Schulingkamp Buras, wife of Peter Buras, they, the surviving husband and son and daughter of the deceased Mrs. Bertha Farley Schulingkamp, being the sole and only legatees under her will, were recognized as such and were sent into possession as the sole owners of her estate, by a judgment of the civil district court; and they were made parties defendants in this suit, in the place and stead of the deceased, Mrs. Bertha Farley Schulingkamp.
 

 The defendants, in defense of the suit, stood upon the provision in article 2402 of .the Civil Code that property bought in the name of either of the parties to a matrimonial community, during the existence of the community, is community property and therefore belongs jointly to the two spouses. The defendants rely also upon the provision in article 2275 of the Civil Code, requiring that every transfer of immovable property must be in writing, and upon the provision in article 2276 that parol evidence shall not be admitted against or beyond what is contained in an act of transfer of real estate.
 

 On the trial of the case, when the affidavit made by Mrs. Elizabeth Koenig Far
 
 *979
 
 ley on November 11, 1941, and referred to by the attorney for the plaintiff as a “counter letter”, was offered in evidence, the attorneys for the defendants objected on the ground that by the transfer of the property by the Suburban Building and Loan Association to Elmer A. Farley and Mrs. Elizabeth Koenig Farley the title for a half interest in the property became vested in the matrimonial community then existing between Charles Farley and his wife; and that the so-called counter letter, signed after the death of Charles Farley, could not have the effect of divesting his estate or the matrimonial community of the title to the half interest in the property. The judge reserved his ruling on the question of admissibility of the document and admitted it in evidence subject to the objection. Mrs. Elizabeth Koenig Farley then, testifying as a witness for her son, and he, testifying in his own behalf, reaffirmed all of the facts stated in her affidavit. The same objection that was made to the so-called counter letter, or affidavit, was made to the testimony of Mrs. Farley and that of Elmer A. Farley; and the judge, reserving his ruling on the question of admissibility, heard the testimony subject to the objection. After the hearing of evidence was completed, the judge sustained the defendants’ objections to the admissibility of the so-called counter letter or affidavit and to the testimony of Mrs. Farley and that of Elmer A. Farley, and gave judgment against him, rejecting his demand. He is appealing from the decision.
 

 The testimony of Mrs. Elizabeth Koenig Farley was not given for the purpose of establishing or creating a title to real estate. The purpose and effect of the testimony was merely to offset the presumption arising from the provision in the Civil Code that the title to property bought during the matrimonial community, in the name of either of the spouses, is thereby vested in the community. When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, and thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her separate control, and as her separate or paraphernal property. Succession of Rouse, 144 La. 143, 80 So. 229; Rodriguez v. Succession of McFettridge, 156 La. 111, 100 So. 68; Succession of Watkins, 156 La. 1000, 101 So. 395; Kittredge v. Grau, 158 La. 154, 103 So. 723; Miller v. Miller, 160 La. 936, 107 So. 702; Tillery v. Fuller, 190 La. 586, 182 So. 683; American Surety Co. v. Noble, 196 La. 312, 199 So. 131; Drewett v. Carnahan, La.App., 183 So. 103, in which a petition for review was denied on August 5, 1938; Smith v. Brock et al., La.App., 200 So. 342.
 

 
 *981
 
 If Charles Farley were living today he could not successfully object to his wife’s proving by parol evidence that the sale which was made by the Suburban Building and Loan Association on July 17, 1912, ostensibly to her and her son jointly, did not vest the title to the half interest in the property in the matrimonial community then existing between her and Charles Farley. His heirs are not third parties, but merely represent their deceased father; and they cannot successfully deny the right of their mother to prove by parol evidence — if it be true — that the half interest in the land which was bought by her and her son jointly from the building and loan association was not bought as community property or paid for with community funds. If she had paid her share of the purchase price with her separate or paraphernal funds, under her separate control or administration, she would be allowed now to prove that fact by parol evidence, and thereby to prove that the three daughters, heirs of her husband, acquired no interest in the property which was bought in her name. The reason for that is that in such a case the verbal proof would not contradict any declaration made in the deed, and would not have the effect of transferring the title from one person to another. By the same token, the heirs of Charles. Farley cannot successfully object to Mrs. Farley’s proving by parol evidence that the so-called purchase price of $800 was intended to be paid and was in fact paid entirely by Elmer A. Farley, and not with funds belonging either to his mother or to the matrimonial community existing between her and his father. If it is true that the half interest which was sold ostensibly to Mrs. Farley, in the land which was sold ostensibly to her and her son jointly, was not bought as community property or paid for with community funds, the heirs of Charles Farley have no interest in the property; and if that be true it is a matter of no concern to them whether the purchase was made for the exclusive benefit of Elmer A. Farley and was paid for exclusively by him, or whether the half interest in the land was bought as the separate property of Mrs. Farley and paid for with her separate or paraphernal funds.
 

 Even if the presumption of law, that the half interest that was bought in the name of Mrs. Farley became community property, were not subject to contradiction, the heirs of her deceased husband could not complain successfully of' her acknowledgment of the truth, so far as her half interest in the supposed community property would be affected by the acknowledgment. Our conclusion however is that the presumption that the purchase made in the name of Mrs. Farley vested the title in the matrimonial community is subject to contradiction by parol evidence, where, as in this case, there are no rights of third persons to be affected, and there is no interference with the right of any forced heir.
 

 The defendants in this suit rely upon the decision in Karcher v. Karcher, 138 La. 288, 70 So. 228, and Bywater v. Enderle, 175 La. 1098, 145 So. 118. Neither of these cases supports the judgment appealed from. Karcher v. Karcher was a suit by the heirs of the deceased Mrs. Karcher against their
 
 *983
 
 father for rents collected by him for a lot which she had acquired by donation from Adam Scheondof during her lifetime. Karcher had sold seven lots to Scheondof, who on the same day donated one of the lots to Mrs. Karcher, and afterwards re-conveyed the six other lots to Karcher, and he in turn sold them from time to time to different parties. He had signed the donation made to his wife by Scheondof for the purpose of authorizing her to accept the donation. And in the sales of the several other lots he had acknowledged that he had acquired title from Scheondof. When threatened with the suit by his children he obtained from Scheondof an affidavit, which he called a counter letter, declaring that the sale from Karcher to Scheondof was a simulation. In defense of the suit brought against him by his children Karcher pleaded that the sale made by him to Scheondof was a simulation and hence that he had never divested himself of the title to the land. The court held that Karcher could not successfully contradict the several acknowledgments which he had made by authentic act that his sale to Scheondof and the latter’s donation to Mrs. Karcher were genuine, and that his and Scheondof’s verbal declarations could not have the effect of destroying the title conveyed by Scheondof to Mrs. Karcher. In that case the lot which was donated by Scheondof to Mrs. Karcher became essentially her separate or paraphernal property because she acquired it not by purchase but by donation.
 

 In the case of Bywater v. Enderle, the plaintiff as head and master of the community between him and his wife brought suit against Enderle to have the community recognized as the owner of certain property bought in the wife’s name. Enderle set up a reconventional demand for a half interest in the property under an alleged verbal agreement made by Mrs. Bywater at the time of the purchase, and he propounded interrogatories on facts and articles to the plaintiff and his wife. After ordering the wife to answer the interrogatories the judge rescinded his order and gave judgment for the plaintiff in the suit. On appeal by the defendant, Enderle, this court affirmed the ruling rescinding the order to compel the wife to answer the interrogatories on facts and articles, on the ground that she was not the head and master of the community and therefore could not divest the community of its title to the property by any answer that she might make to the interrogatories on facts and articles. That decision has no application to this case.
 

 Since we have concluded that the testimony of Mrs. Farley and her son was admissible for the purpose of offsetting the presumption that the title for the half interest in the land in contest became vested in the nlatrimonial community between Mrs. Farley and her husband, the only remaining question is whether all of the evidence on that subject is sufficient to overturn the presumption. The undeniable facts corroborate the testimony of Mrs. Farley and her son. In the first place Elmer A. Farley’s transaction with the building and loan association was never intended to operate as a transfer of title to the property which he mortgaged to secure the loan made by the association. The sale and resale of the land constituted a pignor
 
 *985
 
 ative contract, which was made in the form of a sale and resale for the purpose merely of giving the building and loan association a vendor’s lien, in addition to the special mortgage. The cancelled mortgage note for $800, dated July 17, 1912, signed by E. A. Farley and his mother, and signed by Charles Farley to authorize his wife to sign, was paid entirely by Elmer A. Farley, and the cancelled note was produced by him on the trial of this case. He never surrendered possession of the land, but on the contrary continued to possess it and cultivate it as an orchid farm in connection with his extensive nursery business, which he conducts on the entire tract of land, as the Gentilly Terrace Nursery. After the transaction was had with the building and loan association he constructed extensive improvements on the mortgaged land, consisting of glass-covered hothouses, and the like.
 

 The only evidence that was introduced to contradict the evidence in favor of Elmer A. Farley consists of a paragraph in the last will and testament of Charles Farley, as follows:
 

 “Elmer has received loans from me and 'owes me the difference between what I had in shares and deposits in 1928, and what I now have on deposit.
 
 I also own certain real estate which Elmer holds and has
 
 re-1
 
 corded in his name and uses in his business.
 
 Elmer also owes me certain rents from my properties which he collected for me and has not returned.”
 

 We have italicized the sentence on which the defendants in this case rely particularly; that is, the declaration of the testator that he owned certain real estate which his son held and had recorded in his, the son’s name, and was using in his, the son’s business. That declaration was not a disposing clause in the will,' but was merely a self-serving declaration. It is argued for the daughters of the testator that, inasmuch as there was no other real estate recorded in the name of Elmer A. Farley except the land on which he conducted his nursery business, the declaration in the will of Charles Farley must have had reference to that property. But it is not likely that the declaration had reference to the half interest which Mrs. Farley bought, ostensibly, in the land which was transferred ostensibly to her and her son by the Suburban Building and Loan Association on July 17, 1912, because the half interest which was bought ostensibly in the name of Mrs. Farley was recorded in her name and not in her son’s name; and the heirs or legatees of Charles Farley, as defendants in this suit, are not claiming that the half interest which stood in the name of Elmer A. Farley, in the land which was mortgaged to the building and loan association, belongs to the succession of their father.
 

 The daughters of the deceased Charles Farley, who are the defendants in this suit, do not invoke or even refer to article 2236 of the Civil Code, in which it is declared that an authentic act is full proof of the agreement contained in it against the contracting parties and their heirs or assigns. This article of,the Code is not appropriate to this case because there is no contest or disagreement here between the parties to the authentic act dated July
 
 *987
 
 17, 1912, by which the Suburban Building and Loan Association transferred the land in dispute ostensibly to Elmer A. Farley and his mother. The defendants, although they are heirs of the deceased Charles Farley, are not yet heirs of Mrs. Farley, but are only her presumptive heirs so long as she lives. Rev. Civ. Code, art. 880.
 

 Decree.
 

 The judgment appealed from is annulled and reversed and it is now ordered, adjudged and, decreed that the plaintiff in this suit, Elmer A. Farley, is the sole and exclusive owner of the property which was bought in the name of Elmer A. Farley and Mrs. Elizabeth Koenig Farley from the Suburban Building and Loan Association, by act of sale before Harry L. Loomis, Jr., Notary Public, dated July 17, 1912, and recorded in C.O.B. 257, folio 54, in the Conveyance Office in the City of New Orleans, and described therein as follows:
 

 “A
 
 certain portion of ground, together with all of the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes and appurtenances thereto belonging or in any wise appertaining, situated in the Third District of the City of New Orleans, in the square No. 3082, bounded by Marigny Street, Mandolin or Livingston Street, Stephen Girad Street, and the division line of Hopkins Plantation (now Gentilly Terrace), commencing one hundred and six feet seven inches from Marigny Street, and measuring thence towards Gentilly Terrace one hundred and eighty-five feet four inches and two lines front on Livingston Street, measuring one hundred and sixty feet in depth on the side line towards Marigny Street, one hundred and nine feet eight inches and one and one-half lines in width on the rear line, by a depth on the other side line of one hundred and seventy-seven feet, and designated by the letter
 
 ‘A’
 
 on a sketch of survey made by W. J. Seghers, Surveyor, dated July 20, 1912.” '
 

 The defendants are to pay the costs of this suit.
 

 PONDER, J., takes no part.