McCALEB, Justice.
 

 Anna Lejeune died intestate in the City of New Orleans on November 23rd 1944. She left neither descendants nor ascendants, being survived by her husband, Archie MacDonald, and certain collateral (sisters and heirs of a half-sister) relations. Her succession was opened in these proceedings in the Civil District Court for the Parish of Orleans at the instance of her husband, wherein he was recognized as surviving spouse in community, entitled as such tó an undivided one-half ownership of all property left by decedent (consisting of household furniture and other miscellaneous personal property amounting to $725.71 and a piece of real estate appraised at $10,000) and also owner of the other half as her heir at law (Article 915 Civil Code). Accordingly he was placed in possession of the entire estate 'by' ex parte judgment rendered on June 26th 1946.
 

 On November 27th 1946, plaintiffs, the two full sisters of the decedent, filed a. petition in the succession proceedings for an annulment of the judgment claiming' that the real estate belonged to the paraphernal estate of decedent because she acquired it with funds derived from her earn.ings as operator of a rooming and boarding' house during a period when she was living separate and apart from her husband.
 

 Subsequent to joinder of issue by answer of the surviving husband (in which he-denied plaintiffs’ material allegations and particularly the charge that he and his wife were living separate and apart at the time-she bought the real estate), a trial was-had and thereafter there was judgment dismissing plaintiffs’ demand. They have appealed.
 

 The record reveals the following facts. Decedent and defendant were married in 1917. A few years after the marriage, defendant was employed by the United Fruit Company and moved to Belize, Honduras, where he remained from 1922 through 1929. Decedent went with him to Honduras but, after a short time, cáme back to New Orleans. During 1929, defendant returned to New Orleans and established a domicile separate from that of decedent and, although it appears that they were on friendly terms, the parties continued to- live apart from each other until 1936, when decedent leased a rooming house at No. 3317 Canal Street. Within a year after she obtained possession, defendant moved to the leased
 
 *442
 
 premises, occupying a garage in the rear thereof which he, himself, converted into a room with materials purchased by his wife. At that time, defendant was suffering from an incurable disease (cancer of the throat) and he states that the reason for his living in the garage was due to the odor diffused by the malady, which was offensive to his wife and the occupants of the boarding house. Decedent cooked his meals, which he ate in the kitchen, and he continued to live in the garage apartment from 1936 until 1943, during which time he served as a handyman doing various chores in and around the premises.
 

 On March 2nd 1943, decedent purchased a rooming house located at No. 2926 Canal Street and, in the act of sale, (in which defendant did not appear) she stated that she had been married but once “and then to said Archie MacDonald, from whom she has been separated since 1931; * *” and that she was purchasing with her separate funds- derived from her earnings as manager of a rooming house under her separate administration and control. However, this statement relative to the use of her earnings in payment of the purchase price appears to be merely self serving for, according to the deed no part of the price ($7600) was paid, the sale was consummated purely as a credit transaction, the decedent giving her promissory note for the entire price, payable to the vendor, Home Building and Loan Association, in installments of $54.45 per month. Following the passage of the a'ct of sale, decedent moved to the new address and defendant remained at the other house on Canal Street until, according to his testimony,, he had fixed an apartment for himself in the basement of the newly acquired property. The testimony is somewhat in conflict as to when defendant moved to the new house, plaintiffs testifying that he lived at the old address until that property was. sold by its owner. At any rate, it is certain that defendant moved to the new house and was living therein at the time of the death of his wife in 1944.
 

 The theory of .plaintiffs’ case is, as stated above, that, despite the acquisition of the property during the marriage, it is nevertheless the separate property of decedent, because she was living separate and apart from defendant at the time of purchase which was made with earnings emanating from her operation of the boarding house at No. 3317 Canal Street. Thus, the cause of action is founded on the 3rd paragraph of Article 2334 of the Civil Code, as amended by Act 186 of 1920, which declares:
 

 “The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, .are her separate property.”
 

 
 *444
 
 This provision, as amended, has been interpreted by this court in Houghton v. Hall, 177 La. 237, 148 So. 37, to be applicable only to earnings or other monies derived by the industry of the wife when she is living separate and apart from her husband. Moreover, in view of the other provisions of Article 2334 (defining separate and community property) and those of 2402 of the Civil Code and the jurisprudence thereunder, Houghton v. Hall, supra; Succession of Land, 212 La. 103, 31 So.2d 609 and De Maupassant v. Clayton, 214 La. 812, 38 So.2d 791, plaintiffs are confronted with the presumption of law that the property belonged to the community as it was acquired by decedent during her marriage with defendant and it devolved upon them to establish, by clear and convincing proof, not only that the funds used in payment of the purchase price of the property were derived from her operations of the rooming house but also that she was living separate and apart from defendant at that time. And the fact that decedent declared in the deed that she was purchasing with her separate and paraphernal funds under her separate administration did not in anywise lessen or affect the presumption in’favor of the community. Shaw v. Hill, 20 La.Ann. 531, 96 Am.Dec. 420, Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31, Houghton v. Hall, supra and Cameron v. Rowland, 215 La. 177, 40 So.2d 1.
 

 An examination of the proof in the case at bar makes evident plaintilf’s failure to sustain the burden they assumed. In the first place, it is doubtful that the evidence is sufficient to support a finding that the funds paid on account of the purchase price were derived, from the earnings o-f decedent. Plaintiffs merely introduced a certified copy of the act of sale wherein decedent acquired the property by giving her promissory note for the entire price and without even a down payment. Evidently relying on decedent’s self serving declaration contained in the act, plus the circumstance that defendant does not claim to have personally contributed any funds toward the payment of the monthly installments due the homestead (the mortgage was reduced from $7600 to $6342.35 at the time of decedent’s demise), plaintiffs apparently assume that we would be justified in deducing that the funds used in payment on account of the purchase price were traceable to the decedent’s earnings. But, even if we regarded the proof satisfactory to sustain a ruling of this sort (a view most favorable to plaintiffs),
 
 [1]
 
 
 *446
 
 they would be unable to succeed as the evidence falls far short of establishing their contention that defendant and his wife were living separate and apart at the time the earnings, if any, were acquired. Indeed, the proof is that the parties were living at the same address continuously from 1936 until some time in 1943.
 

 It nonetheless seems to be the contention of counsel for plaintiffs that, since the defendant was living in the . garage and did not at any time occupy the sleeping quarters of his wife, the parties were living separate and apart. But this notion is not well founded as it is manifest that the type of separate living contemplated by Article 2334 of the Civil Code is the same sort of voluntary separation, that is, the intentional establishment of a separate abode in different premises, which is deemed essential under Act 430 of 1938, LSA-R.S. 9:301, in an action for divorce. De Maupassant v. Clayton, supra. It is, of course, well settled that, where the parties live under the same roof and are recognized by neighbors as husband and wife, an action for divorce will not lie even though they occupy separate quarters within the premises and otherwise do not engage in the usual functions of the marital relation, as this does not constitute living separate and apart within the meaning of the law. Hava v. Chavigny, 147 La. 330, 84 So. 892; Arnoult v. Letten, 155 La. 275, 99 So. 218; Quinn v. Brown, 159 La. 570, 105 So. 624 and Singleton v. Rogers, 160 La. 196, 106 So. 781.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . Plaintiffs bore the burden of showing the’ paraphernality of the funds. To do this they were required to affirmatively establish (among other things) that decedent’s earnings were the source of all homestead payments for, in the absence of specific evidence on this score, the presumption in favor of the community is not overcome. Succession of Schnitter, 220
 
 La.
 
 323, 56 So.2d 563 and cases there cited.