70 So.2d 670 (1953)
224 La. 747
Succession of FRANEK.
DALE
v.
FRANEK.
No. 41066.
Supreme Court of Louisiana.
July 3, 1953.
On Rehearing January 11, 1954.
Rehearing Denied February 15, 1954.
*671 John W. Bryan, Jr., New Orleans, for defendant-appellant.
James G. Schillin and Michael M. Irwin, New Orleans, for appellee.
MOISE, Justice.
This matter is a consolidation of the executory proceedings filed by Arthur C. Dale, Jr. v. Mrs. Mary Franek, widow of Arthur J. Brandin, to recover the sum of $5,000, plus interest, etc., the alleged amount due on a certain promissory note executed by Arthur J. Brandin, and secured by mortgage on certain alleged community property, and of the Succession of Mrs. Mary Franek Brandin.
After trial on the merits, judgment was rendered recognizing the note sued on and given by Arthur J. Brandin, on the property involved, which stood in the name of his wife (Mrs. Mary Franek Brandin) as a binding obligation of the deceased husband, the judge having concluded that the property was community property and that the mortgage with which the note was identified, was good as to Brandin's alleged half of the property.
From this judgment, the two heirs of Mrs. Mary Franek Brandin prosecute this appeal.
After the rendition of the judgment, the litigants, through their attorneys, by stipulation, agreed that:
1. The judgment rendered shall be considered as a judgment rendered on the merits, finally dismissing the petition for injunction;
2. That the appeal shall not arrest the execution of the writ of executory process; and
3. That the sheriff be permitted to sell the entire property under said writ, according to law, with the understanding that the proceeds of the sale shall be deposited in the registry of the court, subject to further orders of the court.
The parties litigant having, therefore, acquiesced in the sale of the property involved, the issue for our determination is the ownership of the proceeds of the sheriff's sale.
*672 Plaintiff Dale, the owner of the mortgage note given by Brandin, relies on the fact that the property having been acquired during the marriage, is presumed to be community, but the law is that such is a rebuttable presumption. LSA-C.C. Art. 2402; Succession of McMahon, 176 La. 63, 145 So. 269.
The two forced heirs offered rebuttal proof conclusive that the property is separate, and therefore being in the wife's name, the husband had no right to mortgage or sell it without her consent, which is usually manifested by her signature.
Dale offered no witness but presented certain documentary evidence. He did not testify to the contention that the mortgage was one given through compulsion, because of a pending charge made against Brandin in the Criminal District Court for having obtained money from Dale's mother and Dale under false pretenses. The information in the record, its date, the amount of the mortgage, as well as the date of execution of the mortgage corroborate the allegations of Mrs. Brandin. Neither she nor Mr. Brandin could testify. They were both dead at the time of the trial. To restrain executory process, Mrs. Brandin spoke only through the sworn allegations of her petition for injunction, wherein it is asserted that the note is a fraud and was confected between her husband and Dale alone, both of whom knew that the property was her separate property; and that Mrs. Brandin, as the sole owner of the property, was not a party to the pretended mortgage, which was fraudulently obtained. Mrs. Brandin alleged also that her husband was in a state of duress by a criminal prosecution pending (126,395, Criminal District Court); that Arthur J. Brandin, in desperation and fear and to avoid criminal prosecution fraudulently consorted with Arthur C. Dale, Jr., in executing the pretended note and mortgage; that no money changed hands when the act was passed; that the instrument was confected in a haphazard and hurried manner; that no certificatesmortgage, conveyance or tax researchwere obtained, and the Notary was held free of all responsibility for such nonproduction; that no notice was given by the contracting parties that the title was in the name of Mrs. Brandin; and that the note was given by Brandin to secure a prior indebtedness claimed by Arthur C. Dale, Jr., which indebtedness was the subject of the prosecution instituted.
An examination of the act of sale and the criminal information substantiates these allegations of the deceased's widow. She further alleged that the property never formed a part of the community but was acquired with her separate and paraphernal funds, under her separate administration and control.
Plaintiff Dale did not take the stand.
Conceding for the sake of argument that the property stood in the name of the wife and was community property, the husband had no right to mortgage or sell it without the written consent or authority of his wife. We do not need the thunder of Sinai or the writing on a table of stone to elucidate the commandment of our Code:
"* * * Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent." (Italics mine.) Art. 2334, LSA-C.C.
The above article applies to community property, but if the property is separate, the magnitude of the commandment infringed upon must be compounded.
In this instance, has the presumption of community been rebutted?
We have the following evidential facts:
The property is in the wife's name. The act of sale recites: "here present, accepting and purchasing * * * for herself, heirs * * *." The stated consideration is $2,350, of which $150 was in cash. A *673 reading of this instrument furnishes the best evidence of the conclusiveness as to its contents. The keeping of the homestead book in her possession, the payment of the homestead dues by her and her children also show that the property was under the wife's separate administration and control. The record also discloses that the two children gave their mother, Mrs. Brandin, money, and that Brandin's son, her stepchild, paid board and bought household provisions. The testimony of Brandin's son is, as follows:
"Q. You know whether or not Arthur Brandin ever paid anything on it (the home)? A. No, sir, I am positive that he could not pay anything on it.

"The Court: Q. Why? A. Because he has never worked, your Honor. I don't remember him ever having a job. * * *
"Q. Where did he get his money to live on? A. I don't know. I never saw any of it. I used to help support the house myself.

"Q. Did anybody else help to support the house? A. Yes, George and Isabel." (Italics mine.)
Mrs. M. J. Schoppel, a first cousin to the late Brandin, when propounded the question as to whether she knew what Brandin did for a living, answered:
"No, sir, I have never known him to be employed by any firm or anything that way, and several occasions when money was borrowed my mother would ask him how about getting it back, or something.
"The Court:
"Q. Was that done in your presence? Were you present when your mother spoke to him? A. Yes, I was. And she always used to ask him: Well, why not borrow some money on your house, and we were always under the impression that the home never belong to him. He has stated that several times, that it belonged to his wife."

"Q. He stated that in your presence? A. Yes, that he did."
On cross-examination, when testifying about Brandin borrowing money from her mother and her mother inquiring why Brandin did not borrow it on his home, Mrs. Schoppel was asked:
"* * * what did he tell her?
"Mrs. Schoppel replied: That the house was not his to be borrowed on; he had no equity in the home; that it wasn't hislike if I tried to borrow money on your home, which I wouldn't have anything to do with." (Italics mine.)
The record reflects further proof that during his lifetime Brandin borrowed heavily and that he admitted to others on several occasions that the property was not his, that he had no source of income whatsoever. Counsel for defendant heirs stated that if Dr. Leidenheimer, Mr. Charles Ciaccio, Mr. Sidney Massicot and Mr. Harold Westholz had testified, their statements would have borne out the fact that Mr. Brandin "had no source of income whatsoever, and that he was an oil speculator and that they knew of no occasion when he had earned any money from his oil speculations; that they knew of no jobs which he had."
The foregoing facts are amplified by the statement of the court:
"* * * my recollection is that no witness has testified up to this time that Mr. Brandin made the statement to them that he had no source of income, and therefore, at my dictation the stipulation is changed so as to provide that these witnesses would testify that they knew of no source of income by Brandin.
"Mr. Bryan: I think that is fair.
"Mr. Schillin: Yes, sir.
"The Court: With that, gentlemen, we shall consider the above as a stipulation and will avoid the necessity of those witnesses being placed on the stand."
*674 In Succession of McMahon, 176 La. 63, 145 So. 269, it is stated:
"The presumption is that all property acquired during the existence of the community belongs to the community, although the purchase be in the name of the wife only. [LSA] Civ.Code, arts. 2402, 2405. To rebut this presumption, the wife must show the legal certainty: First, that the funds constituting the price paid for the property, were her paraphernal funds; secondly, that they were administered by her; and, thirdly, that they were invested by her. * * *" See Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478; Cameron v. Rowland, 215 La. 177, 40 So.2d 1.
In Krokroskia v. Martin, La.App., 61 So. 2d 630, 632 the court said:
"Where the property bought during the community is taken in the name of the wife even though there is no declaration in the deed to the effect that the property is bought with separate funds and as her separate and paraphernal property, the wife may overcome with presumption that the property is community at any time afterwards by showing, even by parol evidence, if it be true, that the purchase was made with her separate and paraphernal funds under her separate control and as her separate and paraphernal property."
In Succession of Farley, 205 La. 972, 18 So.2d 586, 589, the Court said:
"* * * If she had paid her share of the purchase price with her separate or paraphernal funds, under her separate control or administration, she would be allowed now to prove that fact by parol evidence, and thereby to prove that the three daughters, heirs of her husband, acquired no interest in the property which was bought in her name.
"* * * When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, and thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her separate control, and as her separate or paraphernal property. * * *" (Italics mine.) See, also, Succession of Le Jeune, 221 La. 437, 59 So.2d 446.
We do not need the three dimension MGM's to see the picture in this record. The heirs of Mrs. Brandin have successfully rebutted the presumption of community. The property is the separate property of Mrs. Mary Franek Brandin. The proceeds of the sale deposited in the registry of the Civil District Court are owned by the heirs of the Succession of Mrs. Brandin, and these proceeds are subject to further orders of the district court.
For these reasons, the judgment appealed from is annulled, reversed and set aside, and the case is remanded to the district court, to be acted upon in accordance with the views herein expressed, and, in conformity with the law; plaintiff, Arthur C. Dale, Jr., to pay all costs of this appeal.

On Rehearing.
HAWTHORNE, Justice.
In the original opinion rendered by this court we held that the mortgage which plaintiff Arthur C. Dale, Jr., was seeking to foreclose by executory process was invalid, and that the property described therein was the separate property of Mrs. Mary Franek, widow of Arthur J. Brandin. We *675 granted a rehearing to reconsider the judgment only insofar as it held the property described in the mortgage to be the separate property of Mrs. Brandin.
The property described in the mortgage was acquired in April, 1919, in the name of Mary Franek, wife of Arthur J. Brandin, from a building and loan association. The consideration recited in the deed was $2,350, of which $150 was paid in cash and the balance of $2,200 in installments according to the building and loan plan. At the time this property was acquired, Mary Franek and Arthur J. Brandin were married and living together as husband and wife, and the husband signed the deed for the purpose of aiding and authorizing his wife.
The status of this property was fixed at the time of purchase, and, since the property was acquired during the existence of the community between Mrs. Franek and Arthur J. Brandin, the presumption is that it was community property. Civil Code, Article 2402; Ramsey v. Beck, 151 La. 190, 91 So. 674; Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441. This presumption, however, can be overcome upon proper proof by the wife's heirs. The requirements of proof applicable to the instant case were well expressed in Betz v. Riviere, 211 La. 43, 29 So.2d 465, 472, thus:
"* * * to overcome this presumption the wife claiming the property in her own name to be her separate property must establish (1) the paraphernality of the funds used for the purchase; (2) her individual administration of the property; and (3) that the money was invested by her. In the event the purchase is made on credit, she has the further burden of establishing (4) that she not only made the down payment out of her separate and paraphernal funds, but that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to meet the deferred payments. * * *"
The question presented here is: Have the heirs of the wife overcome the presumption?
The proof in this record as to the source of the down payment is that the wife's children by a former marriage, aged 15 and 13 at the time of the purchase, gave to her the proceeds of Liberty Bonds, amounting to $300, which their father had given to them, and that the wife used these funds to pay the $150 cash and expenses of the sale. The only evidence of this is the unsupported testimony of the son, George Saldovich, Jr. No effort was made to introduce government records showing the existence of these bonds or the time they were cashed, and, when asked about substantiation, he made no offer to support his testimony or explain the lack of substantiation.
Even if this were considered sufficient proof that the down payment was made with separate funds, proof that she had sufficient separate revenues and funds to make the purchase with reasonable certainty of being able to make the deferred payments is wholly lacking. It is not shown that the wife had any paraphernal property whatever at the time of the purchase. The son himself testified that the proceeds of the Liberty Bonds had to be used as the cash payment because his mother had no other funds. In brief on rehearing attention is called to the fact that the wife had received $3,000 as proceeds of the sale of some property inherited by her from her parents. She received this money some eight or nine years prior to this purchase, and there is no evidence whatever that she still had any of this money or that any of it was ever invested to produce revenue.
The property, therefore, was community property inasmuch as the proof is not sufficient to overcome the presumption that it was community.
The appellant places great stress on the testimony in the record that Mr. Brandin was never gainfully employed and was an unsuccessful speculator in oil transactions. The court on original hearing was impressed by this and, by applying the rules applicable to cash sales, found by negative inference at least that the husband had not contributed to the payment of the property and that it was therefore separate. Mrs. *676 Brandin's son testified that he and his sister contributed the money for the credit portion of the price. A stepson of Mrs. Brandin, a son of Mr. Brandin, testified that he contributed some of the payments. The oldest of these contributors was George Sladovich, Jr. He was born in September, 1903, and on April 10, 1919, when the property was purchased, he was 15 years old. He was married, according to him, in the fall of the year in which the property was purchased and was employed by his father as a clerk in his law office. A child was born to him and his wife in their first year of marriage. His sister was 13 years old at the time of the purchase. She did not testify on the trial of this case. The stepson was only 11 or 12 years old at the time. These facts and circumstances weaken the testimony of Sladovich, Jr., that he and his sister contributed the credit portion of the price. Sladovich, Jr., attempted to overcome the damaging effect of these circumstances by testifying that whatever his father had was his, and that he got the money for the payments from his father. Proof that the wife's separate estate contributed to the payments on the property would not change the community status of the property, but would give rise to a claim for reimbursement against the community. Whittington v. Heirs of Pegues, supra; Succession of Schnitter, 220 La. 323, 56 So.2d 563; Lotz v. Citizens Bank & Trust Co., La.App., 17 So.2d 463. No such claim, however, is presented by this proceeding.
For the reasons assigned, the judgment of the district court insofar as it decreed the property described in the mortgage to be community property is affirmed. All other issues were determined in our judgment on original hearing, which is now final. Appellant is to pay all costs. The right is reserved to the appellant to apply for a rehearing.
PONDER, J., dissents.
MOISE, J., dissents because the decision narrows the right of a married woman to acquire separate property because it imprisons her in the bastile of a judicial interpretation.
MOISE, Justice (dissenting from opinion On Rehearing).
In recommending a rehearing, it was declared by the author of the opinion on rehearing that the law established one rule for credit sales and a different rule for cash sales when a married woman sought to acquire property during the existence of the marriage. On that presentation, I reluctantly withdrew any opposition to the granting of a rehearing. On examination, I now find that the present opinion is not predicated on the law but on a presumed factual situation that the record does not sustain the burden of proof to rebut the presumption of community.
Our jurisprudence has established rules of property. The subject matter is in relation to acquisitions by the husband or by the wife. The rule is admirably expressed in the case of Kittredge v. Grau, 158 La. 154, 103 So. 723, 728, to the effect:
"With regard to real estate, it is well settled that, when a married man, under the regime of the community, buys property with his separate funds, and takes the title in his name, unless the deed contains a statement to the effect that the purchase is made with his separate funds, the property will belong to the community, and the community, at its dissolution, will owe his separate estate for the price which he paid. It is not so with regard to a married woman. The law has zealously guarded her interest against that of her husband or his creditors. When she buys property in her own name, it is not necessary to declare in the deed that it is bought with her separate funds. She may assert and prove the fact whenever it is questioned. But, when a married may buys property in his name, without a stipulation in the deed that it is bought with his separate funds, the presumption in favor of the community is juris et de jure." (Italics ours.) *677 See, American Surety Co. of N. Y. v. Noble and Salter, 196 La. 312, 199 So. 131; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Slaton v. King, 214 La. 89, 36 So.2d 648.
Again, we have a ratification and a repetition of the difference of the two rules in the case of Succession of Farley, 205 La. 972, 18 So.2d 586, 588, which reads as follows:
"The testimony of Mrs. Elizabeth Koenig Farley was not given for the purpose of establishing or creating a title to real estate. The purpose and effect of the testimony was merely to offset the presumption arising from the provision in the Civil Code that the title to property bought during the matrimonial community, in the name of either of the spouses, is thereby vested in the community. When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, and thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her separate control, and as her separate or paraphernal property. [authorities]"
In the most recent case of Succession of Schnitter, 220 La. 323, 56 So.2d 563, 564, it is stated:
"This act of sale did not recite that the purchase price was paid with her separate funds, and the presumption under Article 2402 of our [LSA] Civil Code is that it belonged to the community. This presumption, however, may be overcome by satisfactory proof by the wife or her heirs that the purchase price was paid with her separate and paraphernal funds, and that these funds were administered by her separate and apart from her husband and were an investment by her." See, Succession of Le Jeune, 221 La. 437, 59 So. 2d 446.
The record evidence discloses that both Mr. and Mrs. Arthur Brandin are dead. Of course, the dead cannot testify. They speak on the subject herein involved through their acts and conduct during their lifetimes. Mrs. Brandin speaks through her petition, which she filed in this case, with all of the averments of separate and paraphernal property and with the statement that she has held the property as her own separate property under separate administration and paid for it with separate funds. These statements are sworn to by her. She likewise stigmatizes, in her petition, the conduct of the third person, Arthur C. Dale, who claims in his pleadings that the property in Mrs. Brandin's name was community property, and that the mortgage which he obtained on this property was for a community debt. Mrs. Brandin shows that Dale had charged her husband, Arthur Brandin, with a theft of $4,600 the criminal information will be found in the recordand through fear and compulsion, he gave the mortgage on her property without her knowledge, consent or concurrence, which was merely a result of a compromise of the felony which was pending in the criminal court. Some might use a harsher terms than the word, "compromise".
Arthur C. Dale, the successful litigant, did not take the witness stand. He offered no witnesses on his behalf, and under the majority opinion, he wins this case by a finding that the status of the property was determined to be community at the time of acquisition. The written act of Brandin himself at the time of the act of sale defeats this finding. That act of sale shows that Mrs. Brandin paid $150 as the initial payment; that she herself signed a note for *678 the unpaid balance; that the homestead shares of stock were in her name and the homestead book in her possession, and that she was acquiring this property for herself in her own name and for her heirs and assigns. Brandin, who is now dead, spoke in that acquisition, made at an unsuspicious time, more than twenty-six years ago. He appeared in the act to aid, authorize and assist his wife in acquiring this property for herself, her heirs and assigns. Yet, the majority opinion holds that the acquisition was for the community, and the presumption has not been rebutted.
The law gives Mrs. Brandin's heirs the right to prove by parole testimony that the property was her separate property. George Sladovich, Jr., Mrs. Brandin's son by a previous marriage, who was sixteen years of age at the time of the purchase, swore that his father, George Sladovich, gave him and his sister $300 in bonds, and that they in turn gave the proceeds to their mother which she used to make the initial payment on the property, namely $150. This testimony stands uncontradicted. The majority opinion condemns this testimony as unbelievable because George Sladovich, Jr., was young at the time he and his sister gave their mother the bonds. It further states that this testimony is not supported by the evidence of the sister. It is hard to understand why this should be a reason for reversing the unanimous original opinion when the record clearly shows the circumstances under which Arthur C. Dale obtained the mortgage on the separate property of Mrs. Brandin and the further fact that he neither offered himself or any witnesses to substantiate anything contained in the record. The proof submitted by the heirs of Mrs. Brandin was not sufficient, so says the majority opinionbut the litigant Dale's proof was sufficient unto itself by a mere offering of the act of sale without his own testimony and without any witnesses corroborating his contentions.
With respect to the deferred payments, Mrs. Brandin had the expectancy of the property itself. She had the love and affection of her son and daughter and even that of her stepson, Arthur Brandin, Jr. Her son and daughter had potential earning power as shown by the record. The record reflects that her son was given money by his father, George Sladovich, and he gave his mother money to make her monthly payments. The majority opinion even concedes that the community might owe Mrs. Brandin's estate for these payments.
Brandin left a forced heir, Arthur Brandin, Jr., who lived in the household, and he affirmatively testifies that he aided and assisted with household expenses. He states that his father never contributed anything towards the maintenance and support of the home, and that his father was a chronic borrower. This testimony stands uncontradicted. At one time, he says, his father tried to borrow $4,000 from him, and he asked him why he did not mortgage the house, to which question his father replied that he should have known better since the house did not belong to him. This son of Brandin had a consciousness of the right. He makes no claim on the property as community, and he rebuts by his testimony the presumption that the property was community.
The record discloses $1,100 in cancelled checks which Brandin borrowed from his stepson Sladovich. Louis Schindler, an acquaintance of Brandin, testified that Brandin secured money from him. Brandin also borrowed from his aunt. On September 22, 1947, Brandin by notarial act acknowledged that he owed his wife $10,000. All of this evidence is uncontradicted.
Yet the court gave judgment to Dale, declaring that the property was community. Most likely, Brandin would have been estopped from asserting that the property was community. Why should Dale be accorded a greater right?
The prejudice of an honest opinion is entitled to consideration; the judgment of a trained legal mind deserves the deepest degree of respect, but right and wrong are opposing entities. The proof of this record rebutting the presumption of community is *679 as certain and direct as the magnetic needle of the compass which always points to the north.
The record bears out the views expressed in the suit of Betz v. Riviere, 211 La. 43, 29 So.2d 465. In fact, in that case, judgment was given to the wife with respect to certain separate property, and it is stated that because of the confirmation and ratification of the husband at the time of the acquisition of the property, it was her separate property, and he was estopped from urging the contrary.
It is earnestly submitted that the burden of rebutting the presumption of the community has been thoroughly established.
I respectfully dissent.