'-MOISE, Justice
(dissenting from opinion On Rehearing).
In recommending a rehearing, it was -declared by the author of the opinion on rehearing that the law established one rule for credit sales and a different rule for cash sales when a married woman sought to acquire property during the existence of the marriage. On that présentation, I reluctantly withdrew any opposition to the granting of a rehearing. On examination, I now find that the present opinion is not predicated on the law but on a presumed factual situation that the record does not ■sustain the burden of proof to rebut the presumption of community.
Our jurisprudence has established rules of property. The subject matter is in relation to acquisitions by the husband or by the wife. The rule is admirably expressed in the case of Kittredge v. Grau, 158 La. 154, 103 So. 723, 728, to the effect:
“With regard to real estate, it is well settled that, when a married man, under the regime of the community, buys property with his separate funds, and takes the title in his name, unless the deed contains a statement to the effect that the purchase is made with his separate funds, the property will belong to the community, and the community, at its dissolution, will owe his separate estate for the price which he paid. It is not so with regard to a married woman. The law has zealously guarded her interest against that of her husband or his creditors. When she buys property in her own name, it is not necessary to declare in the deed that it is bought with her separate funds. She may assert and prove the fact whenever it is questioned. But, when a married man buys property in his name, without a stipulation in the deed that it is bought with his separate funds, the presumption in favor of the community is juris et de jure.” (Italics ours.) See, American Surety Co. of N. Y. v. Noble and Salter, 196 La. 312, 199 So. 131; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Slaton v. King, 214 La. 89, 36 So.2d 648.
Again, we have a ratification and a repetition of the difference of the two rules in *766 the' case of Succession of Farley, 205 La. 972, 18 So.2d 586, 588, which reads as fob-lows:
“The .testimony of Mrs. Elizabeth Koenig Farley was not given for the purpose of establishing or creating a title to real estate. The purpose and effect of the téstimony was merely to offset the presumption arising from the provision in the Civil Code that the title to property bought during the matrimonial community, in the name of either of the spouses, is thereby vested in the community. When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, and thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her separate control, and as her separate or paraphernal property, [authorities]"
■ In the most recent case of Succession of Schnitter, 220 La. 323, 56 So.2d 563, 564, it is stated:
“This act of sale did not recite that the purchase price was paid with her separate funds, and the presumption under Article 2402 of our [LSA] Civil Code is that it belonged to the community. This presumption, however, may be overcome by satisfactory proof by the wife or her heirs that the purchase price was paid with her separate and paraphernal funds, and that these funds were administered by her separate and apart from her husband and were an investment by her.” See, Succession of Le Jeune, 221 La. 437, 59 So.2d 446.
The record evidence discloses that both Mr. and Mrs. Arthur Brandin are dead. Of course, the- dead cannot testify. They speak on the subject herein involved through their acts and conduct during their lifetimes. Mrs. Brandin speaks through her petition, which she filed in this case, with all of the averments of separate and paraphernal property and with the statement that she has held the property as her own separate property under separate administration and paid for it with separate funds. These statements are sworn to by her. She likewise stigmatizes, in her petition, the conduct of the third person, Arthur C. Dale, who claims in his pleadings that the property in Mrs. Brandin’s -name was community property, and that the mort *768 gagé' which he obtained on this property was for a community debt. Mrs. Brandin' shows that Dale had charged her husband, Arthur Brandin, with a theft of $4,600— the criminal information will be found- in the record — and through fear and compulsion, he gave the mortgage on her property without her knowledge, consent or concurrence, which was merely a result of- a compromise of the felony which was pending in the criminal court. Some might use a harsher term than the word, “compromise”.
Arthur C. Dale, the successful litigant, did not take the witness stand. He offered no witnesses on his behalf, and under the majority opinion, he wins this case by a finding that the status of the property was determined to be community at the time of acquisition. The written act of Brandin himself at the time of the act of sale defeats this finding. That act of sale shows that Mrs. Brandin paid $150 as the initial payment; that she herself signed a note for the unpaid balance; that the homestead shares of stock were in her name and the homestead book in her possession, and that she was acquiring this property for herself in her own name and for her heirs and assigns. Brandin, who is now dead, spoke in that acquisition, made at an unsuspicious time, more than twenty-six years ago. He appeared in the act to aid, authorize and assist his wife in acquiring this property for herself, her heirs and assigns. Yet, the- majority opinion holds that the acquisition was for the community, and the presumption has not been rebutted.
The law gives Mrs. Brandin’s heirs the right to prove by parole testimony that the property was her separate property. George Sladovich, Jr., Mrs. Brandin’s son by a previous marriage, who was sixteen years of age at the time of the purchase, swore that his father, George Sladovich, gave him and his sister $300 in bonds, and that they in turn gave the proceeds to their mother which she used to make the initial payment on the property, namely $150. This testimony stands uncontradic.ted. The majority opinion condemns this testimony as unbelievable because George Sladovich, Jr., was young at the time he and his sister gave their mother the bonds. It further states that this testimony is not- supported by the evidence of the sister. It is hard to understand why this should be a reason for reversing the unanimous original opinion when the record clearly shows the circumstances under which Arthur C. Dale obtained the mortgage on the separate property of Mrs. Brandin and the further fact that he neither offered himself or any witnesses to substantiate anything contained in the record. The proof submitted by the heirs of Mrs. Brandin was hot sufficient,— so says the majority opinion — but the litigant Dale’s proof was sufficient unto itself by a mere offering of the act of sale withouthisowri testimony and without any witnesses corroborating his contentions. '
*770 With respect to the deferred payments, Mrs.' Brandin had the expectancy of the property itself. She had the love and affection of her son and daughter and even that of her stepson, Arthur Brandin, Jr. Her son and daughter had potential earning power as shown by the record. The record reflects that her son was given money by his father, George Sladovich, and he gave his mother money to make her monthly payments. The majority opinion even concedes that the community might owe Mrs. Brandin’s estate for these payments.
Brandin left a forced heir, Arthur Bran-din, Jr., who lived in the household, and he affirmatively testifies that he aided and assisted with household expenses. He states that his father never contributed anything towards the maintenance and support of the home, and that his father was a chronic borrower. This testimony stands uncontradicted. At one time, he says, his father tried to borrow $4,000 from him, and he asked him why he did not mortgage the house, to which question his father replied that he should have known better since the house did not belong to him. This son of Brandin had a consciousness of the right. He makes no claim on the property as community, and he rebuts by his testimony the presumption that the property was community.
The record discloses $1,100 in cancelled checks which Brandin borrowed from his stepson Sladovich. Louis Schindler, ari acquaintance of Brandin, testified that Brandin secured money from him. , Bran-din also borrowed from his aunt. On September 22, 1947, Brandin by notarial act acknowledged that he owed his wife $10,000. All of this evidence is uncontradicted.
Yet the court gave judgment to Dale, declaring that the property was community. Most likely, Brandin' would have been es-topped from asserting that the property was community. Why should Dale be accorded a greater right?
The prejudice of an honest opinion is entitled to consideration; the judgment of a trained legal mind deserves the deepest degree of respect, but right and wrong are opposing entities. The proof of this record rebutting the presumption of community is as certain and direct as the magnetic needle of the compass which always points to the north.
The record bears out the views expressed in the suit of Betz v. Riviere, 211 La. 43, 29 So.2d 465. In fact, in that case, judgment was given to the wife with respect to certain separate property, and it is stated that because of the confirmation and ratification of the husband at the time of the acquisition of the property, it was her separate property, and he was estopped from urging the contrary.
It is earnestly submitted that the burden of rebutting the presumption of the com-' munity has been thoroughly established.
I respectfully dissent.