(133 So. 163)

**MAYRE v. PIERSON et al.**
No. 30761.

Feb. 2, 1931.

Rehearing Denied March 2, 1931.

Barksdale, Bullock, Warren, Clark & Van Hook, L. Percy Garrot, and Wilkinson, Lewis, Wilkinson & Burford, all of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee Continental Supply Co.

**ROGERS, J.**

Plaintiff is the owner of lots 14 and 15, with the improvements thereon, in Park Place subdivision of the city of Shreveport. He brought this suit to have declared inoperative as to his property the inscriptions of four certain judgments against W. W. Armistead, who is the husband of Mrs. Lillian W. Armistead, one of his ancestors in title. Plaintiff predicates his demand on the claim that the property in question was the separate and paraphernal

property of Mrs. Armistead at the time of the rendition and recordation of the judgments. The court below decided in favor of the judgment creditors, and from that judgment plaintiff appealed.

Mrs. Lillian W. Armistead is the daughter of Dr. J. C. Willis. She acquired the various undivided interests in the property in question by inheritance, donation, and purchase, as her separate and paraphernal property, in the years 1918, 1919, and 1920. At the time of her acquisition the property was burdened with a mortgage indebtedness of $2,015.75 in favor of the Shreveport Mutual Building Association, which she assumed. She liquidated this indebtedness with her own funds on May 6, 1920.

On April 7, 1921, Mrs. Armistead obtained a loan of $8,000 from the Shreveport Mutual Building Association, executing the usual sale and resale evidencing such transactions. These deeds contain the recitals that the property was sold, reacquired, and mortgaged as the separate and paraphernal property of Mrs. Armistead under her separate administration and control.

On December 21, 1925, Mrs. Armistead, authorized by her husband and empowered by an order of the judge of the district court, mortgaged the property to the Commercial Securities Company of Shreveport for $7,250, which she used in paying off the balance due on the mortgage indebtedness of the Shreveport Mutual Building Association.

On March 25, 1927, Mrs. Armistead, assisted by her husband, sold the property to Harry R. Whiting and Gladys Whiting, his wife, the purchasers assuming as part of the purchase price the mortgage indebtedness due the Commercial Securities Company; and on January 3, 1929, Mr. and Mrs. Whiting sold the property to the plaintiff George R. Mayre, Jr., for a cash consideration of $700 and the assumption of the balance due on the said mortgage indebtedness.

The judgments against W. W. Armistead were rendered and recorded in the years 1923, 1924, and 1926.

The judge of the district court rendered two well-considered opinions in the case, one on the merits and the other on plaintiff's motion for a new trial. In deference to what he considered to be the settled jurisprudence on the subject, and in subordination of his personal view, he treated the sale and resale to and from the building association as a sale and purchase and not a mortgage. Accordingly, he held that the paraphernal character of the property involved was to be determined from that particular transaction, and not from the original acquisition of the property by Mrs. Armistead; and his decision is founded wholly on the theory that the reconveyance by the building association to Mrs. Armistead on April 7, 1921, was a sale for a credit consideration of $8,000.

The judge of the district court in reaching his conclusion applied the well-known rule that property bought by either spouse living under the régime of the community becomes, generally speaking, community property, and that the burden rests upon the spouse claiming the property as a separate estate to establish that fact by proof dehors the recitals of the act by which it has been acquired. He stated, in one of his written opinions, that, if the matter was to be judged by the original purchase of Mrs. Armistead, the result might well be different, but, being judged by her purchase in 1921, he thought that plaintiff had failed to rebut the presumption that the property was community property with evidence of that clear character which it was incumbent upon him to produce. The judge found,

that, at the time Mrs. Armistead reacquired the property from the building association, she had comparatively nothing left out of her share of her mother's estate, or out of the gifts which had been made to her by her father and brothers previous to that time, and that no concrete facts had been presented showing that she had any reasonable expectation of meeting the deferred payments out of any other paraphernal property she may have owned, or the revenues therefrom.

We are satisfied, from our examination of the evidence in the record that the property involved herein was originally acquired by Mrs. Lillian W. Armistead partly by inheritance, partly by donation, and partly by purchase, and that the part acquired by purchase, as set forth in the several acts of sale, was acquired as her separate and paraphernal property with her separate and paraphernal funds under her separate administration and control. Hence the property was the separate and paraphernal property of Mrs. Armistead under separate administration and control at the time of the sale and resale to and from the building association on April 7, 1921. The question, therefore, to be determined, is, Did the sale by Mrs. Armistead to the Shreveport Mutual Building Association and the resale to her by the association change the status of the property which was the subject of the transaction from paraphernal to community property? We do not think they did.

Act No. 120 of 1902 provides for the organization, regulation, supervision, and inspection of building and loan associations, and defines their rights, powers, and privileges. Section 9 of the act, as amended by act No. 280 of 1916, is substantially the same as Act No. 115 of 1888. The section requires that the loans made by such associations shall be secured by vendor's lien and mortgage on real estate, and provides for a sale and resale to and from the associations in order that the requirement may be fulfilled.

The judge of the district court based his conclusion that he could not go behind the retransfer of the property by the building association to Mrs. Armistead on July 7, 1921, and that he could not do otherwise than hold the transaction to be a sale for a credit consideration of $8,000, on certain decisions of this court. These decisions are Holloman v. Building Ass'n, 137 La. 970, 69 So. 764; Hutts v. Building Ass'n, 146 La. 85, 83 So. 417; Barnes v. Thompson, 154 La. 1036, 98 So. 657, 658; and Liquidators of Prudential S. & H. Soc. v. Langermann, 156 La. 76, 100 So. 55—and they hold, in effect, that under the pertinent statutes the transfers to and from building and loan associations are sales. But in none of these cases was the question squarely presented as to whether such transactions had the effect of changing the status of the property from paraphernal to community property or vice versa.

In the Holloman Case, the plaintiff, Mrs. Holloman, sought to enjoin the execution of a writ of seizure and sale sued out by the defendant building and loan association, on the ground that the transaction between them was a disguised mortgage entered into for the purpose of subjecting her property to the payment of her husband's debts. The court held that, under the statute, the transaction was a sale and a resale and not a mortgage. The court further held that, even if the plaintiff permitted her husband to receive the money and to use it for his own purposes, that fact would not affect the validity of the contract, which did not bind the wife or her property for the debts of her husband, which in law was for her separate benefit.

In the Hutts Case, the property was transferred to the defendant building and loan association by Hutts, and while the title was in the association the wife of Hutts died. Thereafter the property was retransferred to Hutts and later to Hockaday, a third person. The court held the transfer to and from the association to be sales under the statute, but the principal defense, which was sustained, was that Hockaday, who purchased the property on the faith of the public records, was protected against the suit by the son and heir of Mrs. Hutts, since the record title was not in Hutts at the time his wife died.

In the Barnes Case, the court merely referred to the decision in the Holloman Case, supra, that the sale to and from a building and loan association "cannot be dealt with as a loan secured by mortgage, but as a purchase and a sale, with vendor's rights and privileges." The decision itself was based on the finding as a fact by the court that the property in the wife's name was actually community property.

The Langermann Case was originally heard and decided by one of the divisions of this court, when the court was sitting in divisions. Subsequently, on rehearing, the case was heard and determined by the whole court. The question at issue involved the interpretation and effect of Civ. Code, art. 1753, now repealed. The court held that, where a wife bequeathed property to her husband who married again, a child of the first marriage could claim the property not by inheritance from its mother, but only because its father by his second marriage forfeited his rights therein under the codal article. The court further held that, where a father prior to his second marriage transferred property bequeathed to him by his first wife to a building and loan association, which association retransferred the property to him, retaining a vendor's lien, the

father's title was complete, and a dation en paiement made by him after his second marriage was merely a voluntary retrocession of the property to the building and loan association, and the child of the first marriage was without right or interest therein.

In the cases referred to the controversy was either between the parties to the building and loan contract or by parties claiming through them; and, as heretofore stated, none of the cases involved the paraphernal rights of the wife in the property in dispute.

The purpose for which building and loan associations are established is to enable persons of small means and limited incomes to acquire homes and thus become better citizens and more identified with the welfare and growth of the community. Because of the advantageous results attending the operation of such associations and their beneficient purpose, they have been favored and granted special privileges by various state Legislatures. Our own Legislature has deemed it to be in the interest of our people to encourage the formation and operation of building and loan associations, and has enacted special laws giving them certain well-defined powers and privileges to be exercised in the promotion of their objects.

Building and loan associations do not engage directly in the business of purchasing and selling real estate or in the erection or improvement of buildings. They are strictly loan associations, and assist in the acquisition of homes or the erection and improvement of buildings only so far as they afford facilities to their members of borrowing the necessary money for such purposes. Ordinarily, therefore, the transaction by which a building and loan association lends money to one of its members and secures such loan by a charge on the property of such member would be classed as a mortgage, except for the fact

that our Legislature has deemed it well, in pursuance of its policy to encourage the formation and operation of building and loan associations, to invest such a transaction with the status of a sale so as to secure the amount due by the borrowing member by a vendor's lien and privilege on the property affected. Since liens and privileges are created by law, it was within the power of the Legislature to do this.

The pertinent statute, Act. No. 280 of 1916, declares, in section 9, at page 570: "That every loan on real estate shall be secured by vendor's privilege and first mortgage upon real property situated in the parish where such association is domiciled," etc. And in the same section, at the bottom of page 571, after providing that a building and loan association shall have a privilege of equal rank as a vendor's lien and privilege upon the borrowing member's property as security for the payment of the amount due by such member, further provides: "That such associations are authorized and empowered to contract and agree with any person to acquire or purchase from any such person any property and afterward to sell or dispose of the same property to a member even though said agreement be made at one and the same time, and such contract and agreement shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association to such member, and such association, to secure payment of the amount due by such member, shall have all the rights, privileges and securities which are now accorded by the law to the vendor of the property."

The statute in express terms authorizes a building and loan association to contract for the sale and resale of property, and specifically declares that such a transaction "shall not be considered or dealt with as a loan," but as a sale and resale to secure the amount lent to the borrowing member under a vendor's lien and privilege on the property involved in the transaction.

Hence the sale and resale to and from a building and loan association quoad the parties to the transaction, or to parties claiming under them, must be considered and dealt with as a sale and not as a loan, so as to preserve in favor of the association a vendor's lien and privilege on the property conveyed and reconveyed.

But we do not think it was the intention of the lawmaker, in conferring upon building and loan associations this valuable right, to effect a change in the status of property from paraphernal to community. If this were so, it would wholly preclude a married woman from obtaining a loan from a building and loan association under its plan of operation and reacquiring her property as her separate property.

In the case in hand, Mrs. Armistead transferred the property to the Shreveport Mutual Building Association for a stated consideration of $8,000 cash, and she reacquired the property for a stated consideration of $8,000 on terms of credit, granting to the association a vendor's lien and privilege on the property to secure the debt. She conveyed the property as her separate and paraphernal property, and she reacquired it as her separate and paraphernal property. The debt which she incurred was her separate debt, and the lien and privilege by which she secured the payment of the debt was her separate act. Her husband was no party to the transaction whatever, except for the purpose of authorizing her to enter into it. He did not incur the debt either for himself or for the marital community, and neither he nor the marital community was obligated to discharge it.

Our conclusion is that the property of Mrs. Armistead did not lose its paraphernal character by her transfer to and reacquisition from the Shreveport Mutual Building Association.

For the reason assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of the plaintiff, George R. Mayre, Jr., and against the defendants, Mrs. Kate Armistead Pierson, C. L. Peace, Continental Supply Company, and Pelican Well Tool & Supply Company, decreeing that the property of the plaintiff, to wit, lots 14 and 15 of the Park Place subdivision of the city of Shreveport, together with the buildings and improvements thereon, is not affected by the judgments against W. W. Armistead in favor of Mrs. Kate Armistead Pierson for $5,689.38, with interest, attorney's fees and costs, less a credit of $300, recorded in Mortgage Book 103, page 802, Records of Caddo Parish, in favor of Pelican Well Tool & Supply Company for $185.68, with interest, attorney's fees, and costs, recorded in Mortgage Book 106, page 620, Records of Caddo Parish; in favor of C. L. Peace for $124, with interest and costs, recorded in Mortgage Book 121, page 203, Records of Caddo Parish; in favor of the Continental Supply Company for $2,499.95, with interest, attorney's fees, and costs, recorded in Mortgage Book 148, page 202, Records of Caddo Parish; and that the inscription of the said judgments do not operate as mortgages on plaintiff's said property.

It is further ordered that there be judgment in plaintiff's favor against W. M. Levy, clerk of the First Judicial district court, ordering said Levy to cancel and erase the inscriptions of the said judgments from the mortgage records of Caddo parish so far as the above de-

scribed property of the plaintiff is concerned; defendants, with the exception of W. M. Levy, clerk of court, to pay the costs of suit.

ODOM, J., takes no part.