39 So.2d 734

**HAUSLER v. NUCCIO et al.**

No. 38801.

Feb. 14, 1949.

Rehearing Denied March 21, 1949.

Lenfant & Villere, Howard W. Lenfant and Francis P. Burns, all of New Orleans, for plaintiff-appellee.

Baldwin, Haspel & Molony and Emile A. Wagner, Jr., all of New Orleans, for defendant-appellant.

FOURNET, Justice.

The plaintiff, Mrs. Mildred K. Hausler, claiming that there was an outstanding title in the City of New Orleans to nearly half of Lot 22 of Square 18 of the Edgewood Park Subdivision in New Orleans which she acquired from Luke J. Nuccio through the Pelican Homestead Association, seeks to have the entire transaction set aside, including the $2,000 vendor's lien and special mortgage note given by her in favor of the homestead, and to recover judgment against the homestead for payments made to it in connection with the transaction and against Nuccio for the amount received by him on the purchase price, plus the amount expended by her in good faith in improving the property.

The allegations of the petition are, substantially, that the plaintiff entered into an agreement with Luke J. Nuccio on April 17, 1946, to purchase the property in question for $3,500 in cash, provided she could secure a homestead loan; that through the assistance and intervention of the real estate broker who was handling the sale she applied to the defendant homestead for a loan and in order to qualify to receive such loan she made application for membership in the association, agreeing to subscribe for 20 mortgage loan monthly reduction shares having a par value of $100 each, the association agreeing to ultimately make her a loan of $2,000 at 5% interest, payable in accordance with the provisions of its charter and by-laws, one of the conditions of the transaction being that the homestead association would have the property surveyed and the title thereto examined by their own attorney and a sur-

veyor of their choice at plaintiff's expense; that in purchasing the property she relied on the representation of the attorney of the association that the title was good when in fact 14' 7½" of the full depth thereof abutting on Peoples Avenue is vested in the City of New Orleans; that she became apprised of this only after she had moved into the building on the property and was in the process of making extensive repairs.

The defendants pleaded in limine exceptions of vagueness, misjoinder of parties, and of no cause and no right of action. After these exceptions had been overruled and the plaintiff was ordered to amend, both defendants filed answers denying the plaintiff's right to the relief sought, the association contending it was not plaintiff's vendor, she having purchased the property from Nuccio with the association acting as nothing more than an instrumentality for lending her the $2,000 in order that she might be able to pay the purchase price demanded by Nuccio; that it was only in consummating the sale and in securing the loan that Nuccio transferred the property to it and it, in turn, transferred the property to the plaintiff without warranty, but substituting and subrogating her to all actions in warranty that it had against all previous owners; and that their attorney in examining the title to the property and approving the same acted solely for its own account and not for the account of the plaintiff. In the alternative, the homestead contends the City of New

Orleans has no right or title to the property and is not claiming any interest therein. Nuccio was called in warranty.

There was judgment in the lower court in favor of the plaintiff as prayed for, as well as judgment in favor of the Pelican Homestead Association on its call in warranty against Luke J. Nuccio in the sum of $2,000, with interest and costs. The homestead association prosecutes this appeal.

The appellant is reurging here its exceptions of no right and no cause of action. The former is based on the contention that the plaintiff, as a married woman, was without right to maintain an action involving community property, arguing that although there is contained a stipulation in the deed that the property is being purchased with the plaintiff's personal and paraphernal funds, it also reveals the fact that at the time the plaintiff acquired the property she was married to Leo J. Hausler and there is nothing to show, either in the deed or in the petition, that the funds were her separate and paraphernal funds, hence her action must be dismissed. The latter exception is based on the assumption that the plaintiff's case is grounded solely on the supposition that her title to this property is defective because of the decision of the Court of Appeal for the Parish of Orleans in the case of Faunce v. City of New Orleans, 148 So. 57.

The first exception is clearly without merit. While it is true the petition

contains the statement that the suit is being brought by "Mrs. Mildred Keaton, widow by first marriage of Thomas Parisy, and wife by second marriage of Leo A. Hausler," this allegation must be considered together with those stipulations contained in the act of sale and mortgage from the association to the plaintiff—which act is annexed to and made a part of the petition and the provisions and stipulations of which must, for the purpose of disposing of this exception, be accepted as true—wherein it is declared that *"the herein conveyed property is being purchased with her separate and paraphernal funds."* (Italics ours.)

The other exception is equally without merit for the allegations of the petition do not support the conclusions of the pleader that this suit is based on the Faunce case. The petition contains the specific allegation that the plaintiff was informed by the attorney for the homestead on July 11, 1946, while in the process of making extensive repairs on the property, that there was a serious and important defect in the title to the property which indicated that approximately half of the lot in width, from front to rear, was located in Peoples Avenue, a publicly dedicated street of the City of New Orleans, and, in the next paragraph, she alleges she subsequently learned that the judgment rendered in the case of Faunce v. City of New Orleans held that Peoples Avenue was a public street and that the eastern tier of lots fronting on this avenue and forming a

part of the Edgewood Park Subdivision, of which tier the plaintiff's lot forms a part, lies within the limits of this public street to a depth of approximately 14' 7½".

The association's contention that the transaction whereby it purchased this property from Nuccio and resold it to the plaintiff was not a sale of the property, but, instead, a loan, is untenable. Section 9 of Act No. 280 of 1916, regulating building and loan associations, provides that *"such contract and agreement shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association to such member"* (this identical provision is to be found in Section 50 of Act No. 140 of 1932, being the act codifying the statutes of this State with respect to building and loan associations). In interpreting this provision this court, in the case of Mayre v. Pierson, 171 La. 1077, 133 So. 163, 165, declared that "the sale and resale to and from a building and loan association quoad the parties to the transaction, or to parties claiming under them, must be considered and dealt with as a sale and not as a loan, so as to preserve in favor of the association a vendor's lien and privilege on the property conveyed and reconveyed." To the same effect are the following cases: American Homestead Co. v. Karstendiek, 111 La. 884, 35 So. 964; Holloman v. Alexandria & Pineville Building & Loan Ass'n, 137 La. 970, 69 So. 764; Hutts v. Crowley Building & Loan Ass'n, 146 La. 85, 83 So.

417; Barnes v. Thompson, 154 La. 1036, 98 So. 657; Liquidators of Prudential Savings & Homestead Society v. Langermann, 156 La. 76, 100 So. 55. (Italics and brackets ours.)

Since the plaintiff deraigned her title from one Dennis Sheen, who with Gustave Seeghers, joined in an act before a notary in 1891 formally dedicating Peoples Avenue and fixing the boundaries thereof in accordance with a survey made by Grandjean in 1886 at the behest of Sheen and the New Orleans & Northeastern Railroad Company, we think a brief historical statement and background of the events in connection therewith, as reflected by the decision in the Faunce case and in the case under consideration, is necessary to properly understand and dispose of the issues here presented.

It appears that in 1845 the large tract of land comprising the Hopkins plantation, lying in what is known as the Gentilly section of New Orleans, was purchased by Charles W. Hopkins. At that time the plantation was divided into two portions by Gentilly road, which ran along the banks of Bayou Sauvage in an easterly and westerly direction. In 1872 the city dug a drainage canal, known as Peoples or Peoples Avenue Canal, on this property. This canal, crossing the bayou and Gentilly road approximately at right angles, had the effect of further dividing the tract into four unequal sections. At that time there was in existence a map made by one D'Hemecourt showing that the land on which this drainage canal was dug was a public street, although there had apparently been no official dedication of this strip to public use by the private owners. From this time on, however, the city treated the property as though it belonged to the public, even authorizing the New Orleans & Northeastern Railroad Company in 1881 to construct its tracks thereon along the canal and to deepen Peoples Avenue canal and to use the earth so removed as the foundation for its tracks, all with the apparent acquiescence of the private owners.

When Hopkins died the tract was divided into 5 parts in order that a partition might be effected among the heirs in accordance with a plan made for that purpose by John F. Braun on May 15, 1886, Dennis Sheen, the common ancestor in title of both Faunce and Mrs. Hausler, purchasing Lots 2, 3, and 4 as shown on this plan. The drainage canal does not appear thereon nor does the plan show the width in figures of the right of way as dedicated by the sale of the property to Sheen by the Hopkins heirs, there being merely an indication that there is an open strip running in a northerly and southerly direction across the land which separates Lots 1 and 3 and Lots 2 and 4. For this reason Sheen and the railroad company, in 1886, employed George H. Grandjean, civil engineer and deputy city surveyor, to make a detailed survey and sketch of the property purchased by Sheen under the Braun plan

for the purpose of fixing the exact lines, boundaries, and width of the right-of-way of the railroad. Sheen subsequently sold Lot No. 3 to Gustav Seeger and, together with Seeger, appeared before a notary public in 1891 for the purpose of formally fixing the boundaries of the right-of-way of the railroad as surveyed and fixed by the Grandjean survey, Grandjean's sketch thereof being attached to the act so that it might be perpetuated. The notorial act with attached sketch was duly recorded in the conveyance office. This Grandjean plan shows that Peoples Avenue is 200' wide, that along its east side are the tracks of the railroad company, that near the center is the drainage canal, which is 60' wide, and that along the edge of this canal is an open space between the bank of the canal and the eastern boundary of Lot No. 2.

In 1909 Sheen sold Lot No. 2 to the Edgewood Improvement Association, through which association Faunce claimed title, as does Nuccio in this case. In the act of sale to the improvement association reference is made to the Grandjean survey and sketch and Lot No. 2 was sold as designated on that plan; also contained in the act is a reference to another plan made by Warren B. Reed on April 29, 1909, which plan makes no reference to Peoples Avenue and shows only what seems to be a railroad right-of-way and a canal, omitting the land lying on the west bank of the canal between the water's edge and the boundary of Lot No. 2. When the Edge-wood Improvement Association laid out and subdivided Lot No. 2 as Edgewood Park, it showed on its plan alongside the canal a narrow strip of land that it designated as Primrose Walk. This strip is not wide enough to accommodate the original dimensions of Peoples Avenue as shown on the Grandjean plan. The association sold the lot in controversy in this suit * * * Lot No. 22 of Square 18 of Edgewood Park Subdivision * * * to Grover Lehman Co. in 1918, from which company Luke J. Nuccio purchased it on July 31, 1923. In 1927, at the request of a homestead association on Nuccio's behalf, Gilbert & Kelly drew a sketch of this lot, using as the basis thereof the Reed survey of 1909. This Gilbert & Kelly survey is the same one that was used to sketch plaintiff's lot at the time she took title thereto.

In support of her allegation that title to almost half of the lot sold her by Nuccio through the homestead was outstanding, the plaintiff offered the testimony of Harry E. Sutch who stated that at the time of the Faunce decision he surveyed the Faunce lot; that following the decision he, as the city surveyor, was ordered to survey the entire length of Peoples Avenue; and that in doing so he platted it. This plat is in the record and shows that Peoples Avenue as it was originally platted and surveyed by Grandjean in 1886 runs almost through the center of plaintiff's lot. Sutch pointed out just where the Reed survey projected this property into

Peoples Avenue. He also pointed out that the purported survey made for the plaintiff at the time she purchased the lot was nothing more than a drawing or sketch of the Gilbert & Kelly survey of the property in 1929 that had been based on the erroneous Reed survey plat. He also stated that the property involved in this litigation is in the same category as the Faunce property since the Grandjean line runs through the center of all of the lots forming the eastern tier of the Edgewood Park Subdivision abutting on Peoples Avenue.

The attorney and notary representing the homestead in the transaction, and who is also the vice-president of the homestead association, testified that as he appreciates the Faunce decision, it is correct. In explaining his reason for failing to take the Faunce decision into consideration when running down the title he approved at the time plaintiff purchased Lot 22 he stated the decision was recorded in the name of Faunce and did not, therefore, show on the conveyance certificate in the name of Nuccio, but he gave no explanation of his failure in abstracting the Nuccio title, which was necessary before he could examine the same and render a legal opinion as to its merchantability, to take into consideration the notarial act of Sheen and Seeger in 1891 adopting the Grandjean survey, which was recorded and formed a part of the abstract of the Sheen title as it eventually passed to Nuccio. Nor did the defendant homestead offer any testimony to show why the property had not actually been surveyed in accordance with the Grandjean plat, particularly since the attorney admitted that had it been so surveyed the defect in the title would have been apparent, for it showed up when he had the adjoining lot owned by Nuccio surveyed in connection with a later sale, which caused him to run into the Faunce decision.

■■■ Clearly, therefore, there is an outstanding title to that portion of plaintiff's lot extending into Peoples Avenue; consequently, it is not necessary that she should have been actually evicted before bringing this suit for the recision of the sale. Articles 2452, 2500, 2501 of the Revised Civil Code; McDonold & Coon v. Vaughan, 14 La.Ann. 716; Hale v. City of New Orleans, 18 La.Ann. 321; De St. Romes v. City of New Orleans, 34 La.Ann. 1201; Robbins v. Martin, 43 La.Ann. 488, 9 So. 108; Bonvillain v. Bodenheimer, 117 La. 793, 42 So. 273; Kuhn v. Breard, 151 La. 546, 92 So. 52; Bickham v. Kelly, 162 La. 421, 110 So. 637; Tennent v. Caffery, 163 La. 976, 113 So. 167; Abney v. Levy, 169 La. 159, 124 So. 766; and Bologna Bros. v. Stephens, 206 La. 112, 18 So.2d 914. And since it appears from the evidence that this shortage will leave plaintiff with a lot approximately only 15' wide and with more than half of the house on the lot lying in Peoples Avenue and that she would not have purchased the property without that part from which she is evicted, she has the right to have the sale cancelled, [Article 2511 of the Revised Civ-

il Code; Daquin v. Coiron, 3 La. 387; McCollom v. McCollom, 6 Rob. 506; Robbins v. Martin, supra; Jennings-Heywood Oil Syndicate v. Home Oil & Development Co., 113 La. 383, 37 So. 1], and to a restitution of the price, despite the stipulation by the association that the sale was without warranty, as the record affirmatively shows she was not aware at the time of the sale of the danger of the eviction. Article 2505 of the Revised Civil Code; Bowles v. Alfred, 5 La.Ann. 667; Sewall v. Roach, 5 La.Ann. 683; Bach v. Miller, 16 La.Ann. 44; New Orleans & Carrollton Railroad Co. v. Jourdain's Heirs, 34 La.Ann. 648; Citizens' Bank v. Freitag, 37 La.Ann. 271.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., does not take part.

MOISE, J., recused.