92 So.2d 402 (1957)
Gene Raymond LAZARO
v.
Mrs. Pearl Morlock LAZARO.
No. 20819.
Court of Appeal of Louisiana, Orleans.
February 4, 1957.
*403 Brynes & Wallace, Edward A. Wallace, New Orleans, for plaintiff-appellee.
Herman & Herman and Abraham I. Kleinfeldt, New Orleans, for defendant-appellant.
REGAN, Judge.
Plaintiff, Gene Raymond Lazaro, as owner, instituted this suit in conformity with the provisions of Act 298 of 1938[1], against the defendant, Mrs. Pearl Morlock Lazaro, his stepmother, endeavoring to obtain possession of a double house designated by the municipal Nos. 3316-18 Belfort Street, New Orleans, one-half of which is occupied by her.
Defendant answered and conceded that she was not occupying 3318 Belfort Street as a lessee, but asserted that she possessed an undivided one-half or community interest therein by virtue of the acquisition of this property during her marriage to the plaintiff's father.
From a judgment in favor of plaintiff as prayed for, ordering the defendant to vacate the premises and to deliver possession thereof to the plaintiff, the defendant has prosecuted this appeal.
The facts are not in dispute. The litigants have agreed that they are as is hereinafter set forth.
The defendant and her husband, Gasper A. Lazaro, are now living separate[2] and apart. She occupies one-half of the double cottage and the other one-half thereof is occupied by her stepson and her husband. Her husband acquired the property prior to their marriage. On March 28, 1955, which was during the existence of the community of acquêts and gains, her husband, in order to obtain a loan thereon, transferred the property to the Guaranty Savings & Loan Association and, in conformity with the mechanics of what is colloquially designated as a homestead sale and resale, immediately repurchased it. The act of sale and mortgage was properly registered and recorded in the Conveyance and Mortgage Offices of this City.
On June 27, 1955, the defendant executed an authentic act declaring the property designated by the municipal Nos. 3316-18 Belfort Street to be the family home[3]. This act was likewise duly registered and recorded in the Conveyance and Mortgage Offices of this City on June 28, 1955.
On October 20, 1955, the defendant's husband conveyed the property to his son by a prior marriage, who appears as the plaintiff herein. It is this fact which provoked this litigation.
The defendant concedes that the residence initially was the separate and paraphernal property of her husband, but insists (a) that the sale and resale to and from the homestead without embodying in the deed the dual declaration[4], had the legal effect of converting the real estate from separate to community property, even though it is conceded that her husband's only objective was simply to obtain a loan thereon; and (b) that the registering and recording of her homestead declaration prevented her husband from selling it to his son, the plaintiff.
*404 The plaintiff, on the other hand, contends that the law with respect to the conclusive presumption in favor of the community status of property acquired during the marriage by the husband, wherein the dual declaration has been omitted from the deed, is not applicable to this case for the reason that the mechanics of a homestead sale and resale was created by the Legislature only for the purpose of affording the homestead the advantage of a vendor's lien in addition to a special mortgage and it was, therefore, never the intention of the Legislature, in conferring upon Building and Loan Associations this valuable protection to thereby cause an incongruous change in the status of real property from paraphernal to that of community.
The only question posed for our consideration is one of law, or, in the final analysis, one of statutory interpretation, and that is whether a married man may borrow money from a homestead association and give as security therefor his separate property and, in doing so, avoid converting the property into an asset of the community.
We have been informed by respective counsel that the answer to the above question is res novo. We have been further informed by them that the identical question is now posed for the Supreme Court's consideration, although it has not as yet been argued or submitted to that tribunal for decision.
In any event we have not been able to discover a case, the ratio decidendi of which encompassed these specific facts, however, we believe that the legal compass points to well chartered highways in our jurisprudence which enables us to take our bearings therefrom and thus venture to distinguish this case from the generally accepted rules of law relating to what is community and paraphernal property under these facts.
We shall first set forth the well settled rules of law and then deduce therefrom the conclusion which we believe to be applicable to the present case.
For example, in Slaton v. King, 1948, 214 La. 89, 36 So.2d 648, 651, the husband acquired property by dation en paiement during marriage in consideration of the cancellation of a debt which was owed to him prior to marriage. The organ of the Supreme Court in reiterating the well settled rule, as evidenced by the innumerable decisions cited therein, said:
"We are of the opinion that the acquisition of the property during the marriage without a declaration in the deed by plaintiff not only that the property was acquired with his separate funds but that it was for his separate estate conclusively precludes him from contending that the land does not belong to the community. * * * Acquisitions of real property in the name of the husband during the marriage creates a presumption in favor of the community, juris et de jure, unless there is contained in the deed the double declaration that the property is acquired with the separate funds of the husband and for his separate estate. * * *."[5], [6].
Even where a deed does contain the dual declaration of paraphernality there *405 exists a presumption (although rebuttable) that the property belonged to the community as it was acquired during the marriage.[7]
In view of the foregoing jurisprudence there is no doubt that when a married man buys property in his name, without a dual declaration in the deed that it was purchased with his separate funds for his separate estate, the presumption in favor of the community is juris et de jure.
Is the foregoing rule of law applicable to a simultaneous sale and resale by a married man of his separate property to a homestead when the act of sale or resale omits the dual declaration and when the sole objective was the procuring of a loan thereon in conformity with the requirements of the Louisiana Homestead and Building and Loan Law.[8]
The Supreme Court[9] succinctly set forth the objects and purposes of a homestead when it asserted:
"* * * Building and loan associations do not engage directly in the business of purchasing and selling real estate or in the erection or improvement of buildings. They are strictly loan associations * * *."
The Louisiana Homestead and Building and Loan Law provides that all loans made by homesteads on immovable property must[10] be secured by a vendor's privilege and first mortgage thereon, which is created by virtue of the owner and the homestead engaging in the ceremony of a simultaneous sale and resale of the property. The security of the vendor's lien and privilege, granted by the Legislature to homesteads has been of inestimable value to them.[11] No other lending institution has received this grant.[12]
In explaining the ramifications of the foregoing provision of the Homestead Law the Supreme Court in Mayre v. Pierson, supra, said [171 La. 1077, 133 So. 165]:
"Ordinarily, therefore, the transaction by which a building and loan association lends money to one of its members and secures such loan by a charge on the property of such member would be classed as a mortgage, except for the fact that our Legislature has deemed it well, in pursuance of its policy to encourage the formation and operation of building and loan associations, to invest such a transaction with the status of a sale so as to secure the amount due by the borrowing member by a vendor's lien and privilege on the property affected. Since liens and privileges are created by law, it was within the power of the Legislature to do this."
In this same case, the court, in interpreting the rationale of what is now LSA-R.S. 6:766, and which provides that:
"This contract shall not be considered or dealt with as a loan, but as a purchase or acquisition by the association, and then as a sale by the association."[13]
declared:
"* * * the sale and resale to and from a building and loan association quoad the parties to the transaction, or to parties claiming under them, *406 must be considered and dealt with as a sale and not as a loan, so as to preserve in favor of the association a vendor's lien and privilege on the property conveyed and reconveyed." (Italics ours.)
The courts have already considered the case involving a married woman and a building and loan association and concluded that a similar transaction did not change the character of the property from separate to community.[14]
Again reverting to the general rule that when a married woman buys property in her own name it is not necessary that she declare in the deed that it is purchased with her separate funds. She may assert and prove the fact whenever it is questioned. But, when a married man buys property in his name, without a dual declaration in the deed, the presumption in favor of the community is conclusive. One of the fundamental reasons for the difference in the application of the foregoing rule to a married man as distinguished from a married woman is that the law has always zealously endeavored to guard her interest against that of her husband or his creditors. But does that philosophy or any other reason for the foregoing rule have application to the present case where the separate property of the husband, in conformity with the fiction of a sale and resale, was simply exchanged during the marriage for a loan thereon and to create in favor of the homestead the additional protective advantage of a vendor's lien and privilege.
The Supreme Court[15] has, in the past, recognized a classic exception to the general rule set forth hereinabove and, in taking cognizance[16] thereof, asserted:
"* * * that article 2402 of the [LSA] Civil Code does not apply to contracts of exchange of real estate. Property so acquired during marriage, in the name of either spouse, is substituted for the property given in exchange for it and has the same status or ownership. If the property given was community property, so is the property acquired in exchange for it community property; and, if the property given belonged to the separate estate of the party in whose name it is given, so is the property received in the exchange his or her separate property."
Of course, if a married man intentionally disposes of his separate property and later reacquires it, the final acquisition is for the benefit of the community, but he does not divest himself of title so as to change the paraphernal character of the property by virtue of engaging in the ceremony of a sale and resale with a homestead merely to procure a loan therefrom. If we were to reason otherwise, then by the surreptitious expedient of borrowing money from a homestead on an immovable, for a fraction of its actual market value, a married man could circumvent the law of forced heirship or contract with his wife during the existence of the marriage.
In this connection, in the relatively recent case of Robinson v. Allen, La.App. 1956, 88 So.2d 64, 66 (writ of certiorari denied), we said:
"Were we to hold that the property became an asset of the community of acquets and gains because of the omission of any stipulation that it was intended by the borrower that the property was to retain its paraphernal *407 character, such a holding would be tantamount to saying that a wife could by an act of sale make a transfer of her paraphernal property unto her husband. In this state such sale, except in the cases and for the consideration as provided for in LSA-C.C. Art. 2446, is illegal. See Rush v. Landers, 107 La. 549, 32 So. 95, 57 L.R.A. 353. And as one spouse is forbidden to acquire the property of the other spouse by direct sale, he cannot do it indirectly through a third person interposed. Vicknair v. Trosclair, 45 La. Ann. 373, 12 So. 486; Parnell v. Petrovic, 14 La.Ann. 601."
In conclusion we are again compelled to revert to the rationale expressed in the case of Mayre v. Pierson, supra, wherein the separate property of a married woman was involved and the Supreme Court in connection therewith said [171 La. 1077, 133 So. 166]:
"But we do not think it was the intention of the lawmaker, in conferring upon building and loan associations this valuable right, to effect a change in the status of property from paraphernal to community. If this were so, it would wholly preclude a married woman from obtaining a loan from a building and loan association under its plan of operation and reacquiring her property as her separate property."
We likewise are convinced that it was not the intention of the lawmakers in conferring upon building and loan associations this valuable right to affect a change in the status of a married man's property from paraphernal to community. We reiterate that if we were to rationalize otherwise, then by the surreptitious expedient of securing a loan from a homestead on an immovable, for a relatively small portion of its value, a married man could circumvent the law relating to forced heirship or contract with his wife during the existence of the community of acquêts and gains.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
McBRIDE, J., absent, takes no part.
NOTES
[1] Better known as the Sharecroppers Act. LSA-R.S. 13:4911 et seq.
[2] Not by virtue of a judicial decree.
[3] In conformity with the provisions of LSA-R.S. 9:2802.
[4] (a) that the price was paid with his separate funds and (b) that the title was to vest in his separate estate.
[5] In Sharp v. Zeller, 110 La. 61, 34 So. 129, 133, the basis for the requirement of a double declaration in the deed is stated thus: "The reason for this, doubtless, is to bind the husband irrevocably, so that he should be unable to subsequently abandon the property to the community in order to exercise upon it, as a creditor, a right of priority for the replacement of the sum expended for its purchase. A mere statement by the husband that the [purchase] price of the property was made with his separate funds is not inconsistent with the fact that the ownership was intended to be vested in the community. It would simply place of record a declaration in aid of a claim for reimbursement."
[6] LSA-C.C. art. 2402.
[7] Bruyninckx v. Woodward, 1950, 217 La. 736, 47 So.2d 478.
[8] LSA-R.S. 6:721 et seq.
[9] Mayre v. Pierson, 171 La. 1077, 133 So. 163, 165.
[10] It is mandatory.
[11] Conservative Homestead Ass'n v. Conery, 169 La. 573, 576, 125 So. 621.
[12] It was almost inevitable that the grant of this privilege to homesteads would invite litigation because of the impact of a fiction upon the general laws of the State.
[13] The courts have consistently maintained the validity and actuality of the sales. American Homestead Co. v. Karstendiek, 111 La. 884, 35 So. 964. See also Hausler v. Nuccio, 214 La. 1069, 39 So.2d 734.
[14] Mayre v. Pierson, supra; Capillon v. Chambliss, 211 La. 1, 29 So.2d 171. These cases reveal that the courts found it necessary to recede, to some extent, from a rigid interpretation of the statute. While the court maintained the legal fiction that these "criss cross transactions" were actual sales, to modify the effect upon the character of the property (separate or community) forming the subject of the sale and resale.
[15] Kittredge v. Grau, 1924, 158 La. 154, 103 So. 723.
[16] Kittredge v. Grau, 158 La. 171, 103 So. 729 (on rehearing).