99 So.2d 34

Joseph RUFFINO, Jr.

v.

Mrs. Corinne HUNT.

No. 43320.

Jan. 6, 1958.

Rehearing Denied Feb. 10, 1958.

2. No issue is made in this court of the fact that plaintiff here seeks a judgment against both husband and wife in solido.

Harold M. Rouchell, and Joseph V. Bologna, New Orleans, for appellee.

Weiss & Weiss, S. Paul Weiss, Jr., New Orleans, for defendant and appellant.

McCALEB, Justice.

Plaintiff instituted this suit against his former wife to have a certain piece of improved real estate, designated as Lot 13 of Square 48 in the Second District of New Orleans, bearing Municipal No. 624 St. Philip Street, declared to be his separate property and, if necessary, for a final partition of the community formerly existing between them.

The salient facts are not disputed respecting the acquisition of and subsequent transactions affecting the property. At the time of the marriage in 1938, plaintiff was the owner of the property, having purchased it in 1936 while a single man. In 1939, 1940 and 1944 he borrowed money on this property and an adjoining lot, which he had acquired after the marriage, from the Home Building & Loan Association. Each of those loans was effected by a transaction of sale and resale to and from the homestead, in conformity with R.S. 6:766, and, in none of the resales did plaintiff declare that he was acquiring the property with his separate funds and for his separate estate.

Plaintiff obtained a judgment of divorce from defendant in 1948. During those proceedings, there was an abortive attempt by the parties to partition the community property. However, the trial judge found this partition invalid since it was completed while the parties were still married.

Following a trial of the case, the judge declared the lot in dispute to be the separate property of plaintiff and further rendered judgment ordering the sale at auction of other community assets to effect a partition. In addition, he found that plaintiff was indebted to defendant in the amount of $1,867.27, in accordance with an account prepared by an auditor appointed by him, and ordered defendant to return a diamond ring belonging to plaintiff or suffer a debit of $1,000 on the amount due her.

The defendant has appealed from this judgment and the plaintiff has answered, requesting that the first settlement be declared valid and, alternatively, that the judgment be affirmed.[1]

---

1. As plaintiff's counsel has neither argued orally or in brief nor cited authority in support of the first settlement, it is evident that they have abandoned this contention.

Defendant asserts in this Court that the trial judge erred: (1) in holding the real estate in dispute to be plaintiff's separate property; (2) in rejecting her claim for $19,550.21, allegedly due under her theory of a proper accounting, and (3) in concluding that plaintiff had not donated his diamond ring to her niece.

It is defendant's contention that, notwithstanding its purchase prior to the marriage, Lot 13 became community property as the result of the sales and resales to and from the homestead in which resales plaintiff did not declare that he was purchasing the property with his separate funds and for his separate estate.

The proposition is not tenable. Article 2402 of the Civil Code provides that the community "* * * consists of the profits of all of the effects of which the husband has the administration and enjoyment, * * of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may *acquire* during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way. *. * *".

■ As applied to this case, the key word of the article is "acquired", which we have underscored. When real property is sold

to a homestead for cash and simultaneously resold by the homestead to its owner, the latter has not acquired anything. Such a transaction, which is for the purpose of providing the homestead the security of a vendor's lien and first mortgage, is purely a pignorative contract as this Court has heretofore designated it on two occasions. See Succession of Farley, 205 La. 972, 18 So.2d 586 and Capillon v. Chambliss, 211 La. 1, 29 So.2d 171.

Nevertheless, counsel for defendant, pointing to the statutory provisions declaring that such contracts shall not be considered as a loan but as a purchase by the homestead association from the member and as a resale to the member (See R.S. 6:766), say that the courts are thereby precluded from regarding such transactions in their true factual and legal character and, in support of this position, they derived comfort from a line of decisions in which the statutory pronouncement has been applied as to the contracting parties and those claiming under them. See Holloman v. Alexandria & Pineville Building & Loan Ass'n, 137 La. 970, 69 So. 764; Hutts v. Crowley Building & Loan Ass'n, 146 La. 85, 83 So. 417; Barnes v. Thompson, 154 La. 1036, 98 So. 657 and Liquidators of Prudential Savings & Homestead Society v. Langermann, 156 La. 76, 100 So. 55.[2]

---

2. Compare Hausler v. Nuccio, 214 La. 1069, 39 So.2d 734, where, in upholding the transaction as a genuine sale with warranty under Act 280 of 1916 (the statute then in effect), we cited the above enumerated cases as well as American Homestead Co. v. Karstendiek, 111 La. 884, 35 So. 964 and Mayre v. Pierson,

The cited cases were considered and explained by this Court in the later case of Mayre v. Pierson, 171 La. 1077, 133 So. 163,[3] wherein it was held that a sale by a married woman of separate property to a homestead and the latter's reconveyance of the property to her did not transform the status of that property from paraphernal to community. It was resolved that the device of sale and resale, provided by the Legislature to effect a vendor's privilege and first mortgage in favor of homesteads in making loans on real estate, was to be considered as a sale and resale only as to the parties to the transaction but otherwise to be dealt with in its true character. Thus, the ruling of the Court is grounded on a common-sense interpretation of legislative intent—that is, that the prime objective of the Legislature was to have homestead associations secured by a vendor's lien and that it was never its aim to produce a change in the status of property from separate to community as the consequence of the placing of a secured loan thereon.

Counsel for defendant would have us distinguish this case from Mayre v. Pierson,

Succession of Farley and Capillon v. Chambliss on the basis that the separate property of married women was involved in those matters whereas, here, we are concerned with the separate property of the husband.

In Succession of Farley and Capillon v. Chambliss, the Court adverted to the well-established rule that, when real estate is purchased in the name of a married woman, the presumption that it belongs to the community is a rebuttable presumption even though there be no statement in the deed that the purchase is made with her separate funds under her exclusive administration and control, whereas, in the case of the husband, the presumption in favor of the community is *juris et de jure* in the absence of the dual declaration in the deed that the property is acquired with his separate funds and for his separate estate.[4] But the circumstance that the Court was dealing with the paraphernal property of married women in those matters,[5] and not the separate property of the husband, was purely obiter dicta and had no bearing whatever on the conclusion that the transactions were in reality mortgages and could only be con-

171 La. 1077, 133 So. 163. That case, however, was not one of sale and resale. There, Nuccio sold the property to the homestead and the latter sold to Mrs. Hausler, who was successful in having the transaction set aside, and in holding the homestead liable under its warranty, because of a defect in title.

3. And still later in Capillon v. Chambliss, supra.

4. See also Slaton v. King, 214 La. 89, 36 So.2d 648 and authorities there cited.

5. Indeed, in Succession of Farley, the question involved was whether a mother, who had signed a vendor's lien note with her son for his accommodation, could subsequently disclaim any proprietary interest in the property of the son when a half interest in the property had been inventoried in the father's succession as part of the community estate.

sidered as sales when the issue was between the homestead association on the one hand and the borrower and his or her creditors on the other.

Recently, in Lazaro v. Lazaro, 92 So.2d 402, the Court of Appeal for the Parish of Orleans was confronted with the identical question here presented and properly held that the case was controlled by the ruling in Mayre v. Pierson, supra. Since we conclude that nothing is acquired in transactions of this sort, there is no need for a declaration respecting the separate character of the property and it matters not whether the property happens to be the separate property of the husband or that of the wife.

The other specifications of error set forth by counsel for defendant involve the entire accounting and settlement of the community and require a consideration of a number of questions. It is contended that $19,550.21 is due defendant. However, we find upon an examination of the record that most of the specific claims asserted in the brief of counsel (they did not orally argue the question of the account), are buttressed more on counsel's own theoretical appraisal of the settlement than from the facts in the case. A review of the evidence prompts us to make the following observations and findings.

The lots in question are adjacent and improved. We have found Lot 13 to be the separate property of plaintiff; Lot 12 is admittedly community property. The im-provements on Lot 13 consist of a barroom, some apartments and a commercial garage. Lot 12 is covered by a roof suspended from the surrounding walls and is also used as a garage. Plaintiff has apparently managed the entire property as a unit and the auditor appointed by the court attributed one-third of all expenses and improvements to the community and two-thirds to plaintiff's separate estate, indicating in his report that opposing counsel agreed to this ratio. However, defense counsel argue in their brief that only 7% of the improvements should be attributed to the community, this figure being an estimate derived from the relative value of the two lots. In reaching this result, counsel value the community lot at $3,150 and the separate lot at $36,090. The appraisement of the community lot is taken from the inventory made under order of court and evidently represents the value of the land before the improvements. The evaluation of the separate lot, which was never inventoried, is attributed to an alleged appraisal made in 1955, which, as we shall hereafter explain, was not introduced in evidence.

We think it clear that there is no accurate basis for the adoption of the ratio suggested by counsel for defendant. While the ratio employed by the auditor appears to be quite favorable to plaintiff (when it is considered that most of the improvements are his separate property) we cannot deduce, in the absence of evidence upon which

to rest a different finding, that it is manifestly wrong. Since it has the approval of the trial judge, there is no cause for disapproving this ratio.

■ Under the attempted first settlement, plaintiff gave defendant $3,000 in cash plus other items of personal property. The judge, in settling the community, deducted this $3,000 from defendant's half interest since it could not be returned to the mass. Counsel contest this deduction on the ground that the wife is not accountable for funds expended by her during the community.

This claim is not well founded for the reason that, since this first settlement was void, the parties were required to restore to the community all property received under it. Defendant cannot be allowed to assail the validity of the settlement and at the same time retain its fruits. This $3,000 was fictitiously included in the community inventory in computing the net share due each party and, therefore, defendant was actually charged with only one-half of this amount.

■ It is further asserted that the judge erred in fixing the value of the Nash automobile received by the wife at the time of the void settlement. The judge held the wife accountable for $1,350 as the value of the car. Defendant testified that she sold the car soon after receiving it for $1,300 and introduced (without objection) an affidavit from the purchaser to that effect. Hence it appears that the sale price of the car should have been charged against defendant rather than the figure fixed by the judge. Accordingly, defendant should be given judgment for an additional $25, being one-half of the $50 overvaluation placed on the car.

■ Defendant next claims that plaintiff be declared indebted to the community for $2,500. The record shows that he borrowed this sum from the bank over two years before the marriage. Since defendant has made no showing as to what part, if any, of this loan was repaid after the marriage, the contention is without merit.

■ By far, the largest single sum for which defendant claims that plaintiff should be held accountable is founded on the alleged enhanced value of plaintiff's separate property resulting from the use of community funds in improving it. It appears from the evidence that the property was purchased in 1936 for $5450. An "appraisal" [6]

6. This appraisal was never introduced in evidence. However, counsel for plaintiff admitted, in reply to a query by the trial judge, that an appraisal was made but it is difficult to understand from counsel's statement that the amount of the appraisal of Lot 13, with improvements, amounted to $36,090. They contend in their brief that it was approximately $20,000. Be this as it may, for purposes of our discussion, we will consider the amount of $36,090, alleged by defense counsel, to be the correct value.

in 1955 allegedly revealed that its value was $36,090. Other than the sum of $6519.38, found by the judge to be the sum used which effected an enhancement in the value of plaintiff's property,[7] the claim was disallowed. The reason for the disallowance was that there was no proof showing that the enhanced value of the separate estate resulted from other expenditures of community funds.

The ruling was correct. The community is not entitled to reimbursement for any increase of the separate property of one of its members which is due to the " * * * ordinary course of things, to the rise in the value of the property, or to the chances of trade." Civil Code Article 2408. Defendant has not shown either the value of plaintiff's separate estate at the commencement of the community or the amount of enhanced value which is attributable to the improvements rather than the general increase in real estate value. Hence, the claim must be denied. Abunza v. Olivier, 230 La. 445, 88 So.2d 815.

Inventoried as a community asset was the stock in trade of plaintiff's bar, for which plaintiff had paid $1,977.07 in liquor bills. Plaintiff contended that this sum should be allowed as a deduction from the valuation of the stock in trade. The auditor recognized the claim and the trial judge approved his action in this respect. Counsel for defendant asserts that this was error because plaintiff is not entitled to reimbursement from the community for any debts paid by him prior to the date of its dissolution.

The point is well founded. The suit for divorce was filed on December 24, 1947 but judgment was not rendered until January 22, 1948. The auditor obtained the information concerning the stock in trade from plaintiff's income tax return which reflected the inventory of liquors as of December 31, 1947. The $1,977.07 was paid by defendant after that date but $1,416.01 of this amount was paid before the divorce judgment was rendered.

Under the jurisprudence as established in Tanner v. Tanner, 229 La. 399, 86 So.2d 80 and Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, the community was dissolved as of the date of rendition of the divorce judgment, such dissolution not having a retroactive effect to the date of the filing of the suit.[8] Consequently, all bills paid prior to the dissolution of the

---

7. Plaintiff does not contest this finding.
8. Upon further reflection since the rendition of these decisions, the writer of this opinion entertains doubt as to the correctness of the view that Article 2432 of the Civil Code should not be applied in suits for separation from bed and board by divorce. It plainly appears that the prior jurisprudence is in accord with legislative intent or, at any rate, the Legislature has approved the jurisprudence applying Article 2432 in divorce and separation cases—for, in amending Article 155 of the Civil Code in 1944 (Act 200 of 1944) it provided " * * * Upon reconciliation of the spouses, the community

community are not deductible. While the use of the inventory of the stock in trade as of December 31, 1947, some 22 days before the community was dissolved, was no doubt inaccurate (as this does not show the liquor stock on hand at the date of dissolution), this circumstance does not justify the deduction of liabilities paid with community funds in the computation of community assets. Accordingly, the allowance of the deduction of $1977.07 is erroneous to the extent of $1416.01, which amount should be returned to the community mass and defendant given judgment for one-half thereof.

 Counsel additionally complain that the judgment does not specify that defendant·is entitled to share in the revenues of the property now held in·indivision by the parties pending a partition by licitation.

It was not necessary for the judge to so provide. As defendant is entitled to share in such revenues by operation of law, her rights are not affected adversely by the judgment.

The final item in dispute is a man's diamond ring valued at $1,000. This ring was in the community bank box and was removed therefrom by defendant. Defendant testified that, in a telephone conversation with plaintiff following their separation, she offered to return the ring but he told her to keep it for her niece and give it to her. Plaintiff denies the phone conversation and his purported gift to defendant's niece. The judge rejected the claim.

After an examination of the evidence, we cannot say that the judge erred in his resolution on this question of fact and, therefore, his ruling will not be disturbed.

For the foregoing reasons, the judgment appealed from is amended by increasing the amount due defendant by plaintiff to the sum of $2,600.27 and, as thus amended, it is affirmed.

FOURNET, C. J., absent.

99 So.2d 43

### Alfred T. THORNTON

v.

### Connie THORNTON.

No. 43785.

Jan. 6, 1958.

may be re-established by husband and wife jointly, *as of the date of the filing of the suit for separation from bed and board*, by an act before a notary, * * *". Emphasis of the writer. See also Act 304 of 1950.